STATE OF INDIANA *v*. ENSLEY ET AL.

[No. 29,760. Filed February 8, 1960. Rehearing denied April 28, 1960.]

474

476

*Edwin K. Steers*, Attorney General, and *Richard M. Givan*, Assistant Attorney General, for appellants.

*Frederick J. Capp*, *Robert A. Claycombe*, and *Claycombe & Claycombe*, all of Indianapolis, for appellees.

BOBBITT, J.—This action was instituted by the State of Indiana under the Eminent Domain Act of 1905,[1] to condemn and appropriate a strip of land varying in width from 20 feet at the north end to 40 feet in the center, then reducing in width to 25 feet at the south end, which is the southeast corner of the property, being a total appropriation of approximately 7/10s of an acre.

The land taken is off the entire east side of certain property owned by appellees Ensleys,[2] which property is bounded on the north by 62nd Street, on the east by Keystone Avenue, on the south by 61st Street, and on the west by Hillside Avenue, in the City of Indianapolis, Indiana.

This property was appropriated for the purpose of widening Keystone Avenue and constructing thereon an improved highway as a part of the Indiana State Highway System.

The court-appointed appraisers reported the total damages, as a result of the taking, to be $16,625. Both

---

1. Acts 1905, ch. 48, §1, p. 59, being §3-1701, *et seq*. Burns' 1946 Replacement.

2. Hereinafter in this opinion when appellees are mentioned, it is deemed to relate only to appellees Jack R. Ensley and Bennie (Beni) Ensley, husband and wife.

the State of Indiana and appellees filed exceptions to this report. The issue of damages was then tried by a jury, which returned a verdict for appellees and assessed total damages in the sum of $127,733. Judgment was rendered accordingly.

The overruling of appellant's motion for a new trial is the sole error assigned.

Because of the nature of the real question presented in this case we need consider only Specification No. 2 and Specification No. 12 of appellant's motion for a new trial.

Specification No. 2 asserts that "The verdict of the jury is contrary to law."

Specification No. 12 raises the question that the trial court erred in giving defendants-appellees' tendered Instruction No. 8 over the proper objection of the State. Such instruction is as follows:

> "The owners of every parcel of real estate abutting upon a public highway are entitled to the right to use such highway for the purpose of egress and ingress to their premises *for the full length of the abutment of said real estate upon such highway,* this being also known as the right of access, and such owner further has the right that said highway be kept open and free from any obstruction which prevents or materially interferes with the ordinary means of ingress to and egress from said real estate.
>
> "This is an individual right of the owner or owners of said real estate as distinguished from the interest of the general public.
>
> "If you find by a preponderance of the evidence that there is *a partial limitation and obstruction* of such right of the defendants, then the taking of such right in the manner prayed for in the complaint herein is an element of damages to the owners of the real estate described in the complaint herein." (Our italics.)

*First:* We are confronted at the outset with appellees' motion to dismiss on the ground that appellant's brief was not filed in time because it was left with the custodian of the State House at six o'clock P.M. on July 9, 1959, the last day for filing, and was not picked up until the next morning, July 10, 1959, by the Clerk who marked the brief as having been filed on July 9, 1959.

There is, in appellant's brief in opposition to the motion to dismiss, an affidavit from the clerk in which she states that she considers the custodian of the State House as her agent for the receipt and filing of briefs and transcripts and other papers which may be filed between the hour of closing of her office and twelve o'clock midnight of that day. *Elliott* v. *Gardner* (1943), 113 Ind. App. 47, 46 N. E. 2d 702, sustains this custom. See also: F. W. & H. Ind. Tr. & App. Pract., §2666, p. 282.

This arrangement was made for the convenience of attorneys and we have been shown no reason why the clerk of this court cannot make the custodian of the State House her agent for this purpose. The time for filing appellant's brief herein did not expire until twelve o'clock midnight on July 9, 1959, and we believe that under the circumstances as shown by the record here, that it was filed "in time."

*Second:* Acts 1935, ch. 76, §3, p. 228, being §3-1706, Burns' 1946 Replacement, defines the elements of damages in a condemnation case as follows:

"First. The fair market value of each parcel of property sought to be appropriated, and the value of each separate estate or interest therein;

"Second. The fair market value of all improvements pertaining to the realty, if any, on the portion of the real estate to be condemned;

"Third. The damages, if any, to the residue of the land of such owner or owners to be caused by taking out the part sought to be appropriated;

"Fourth. Such other damages, if any, as will result to any persons or corporation from the construction of the improvements in the manner proposed by the plaintiff."

The State contends that damages, if any, caused by the placing of a divider strip in the center of the new highway are not compensable; and that the divider strip was installed for the purpose of traffic regulation and control and was done under the police power of the State and not under the Eminent Domain Statute.

Appellees assert that they are not only entitled to damages occasioned by the taking of a portion of their land, but also to consequential damages under §3-1706, Fourth, *supra,* for the alleged depreciation in the value of their remaining property caused by an alleged material interference with their right of ingress and egress resulting from the construction of a divider strip on Keystone Avenue between 61st and 62nd Streets.

If appellees' position is correct, then the judgment of the trial court should be affirmed. However, if the State's position is well taken, then the verdict of the jury is, under the evidence in the record, contrary to law and the judgment must be reversed.

The record shows that defendants-appellees introduced evidence to show that the divider strip affected the access to their property. Some of their witnesses testified that the strip of land actually taken was worth $75,500; and that the damages to appellees' land caused by the manner in which the highway was constructed was $157,650.

If the consequential damage allegedly caused to the remaining property by the manner in which the highway is constructed (with the divider strip) is com-

pensable, then the evidence in the record is sufficient to sustain the verdict of the jury and it is not contrary to law.

We do not concur with appellees' contention that the appellant—State of Indiana—is here attempting to assert that the damages assessed by the jury are excessive. The question which we understand the State to have presented is that damages, if any, caused by the alleged material interference with the right of ingress and egress, are not the direct result of the taking of appellees' land but result from the manner in which the highway is constructed, and hence, are not compensable under the factual situation in this case, and because the verdict of the jury included such damages it is, therefore, contrary to law.

It is conceded by both parties hereto that there is independent evidence in the record from which the jury could have found that the value of the property actually taken was $75,500.

We must first determine whether or not appellees are entitled to consequential damages for the alleged material interference with their right of ingress and egress to their property onto and from Keystone Avenue under paragraph Fourth of §3-1706, *supra,* because of the manner in which the highway is constructed.

Appellees own and operate a recreation center known as Little America on the land from which the strip was taken by appellant. The entire tract of land constituting Little America consists of approximately 16½ acres and is zoned for business.

Prior to the widening of Keystone Avenue there was an entrance some 65 to 68 feet wide on the north portion of the east side of the tract of land, so that both north and southbound traffic could enter appellees' premises from Keystone Avenue. There was then, and

still is, an entrance about 50 feet wide on 62nd Street on the north side of the property, about one-half block west of the intersection of Keystone Avenue and 62nd Street. These two entrances constituted appellees means of ingress and egress for vehicular traffic entering and leaving Little America.

The Highway Commission in reconstructing Keystone Avenue left an entrance of 40 feet in width on the north portion of the previous existing driveway onto Keystone Avenue. However, since the construction of the divider strip, only southbound traffic on Keystone Avenue has access to Little America because the divider strip provides no facilities for northbound traffic to turn left into appellees' property directly from Keystone Avenue. Northbound traffic, instead of turning directly into the present Keystone Avenue entrance, must now continue to the intersection of 62nd Street and Keystone Avenue where it then can make a left turn and drive west approximately one-half block and enter Little America from the 62nd Street entrance.

There is a filling station on the southwest corner of 62nd Street and Keystone Avenue, which is the northeast corner of appellees' property here involved.

In support of its contention that the use of the divider strip to control and regulate traffic is an exercise of the police power, the State introduced evidence to show that the divider strip runs from 61st Street to 62nd Street; that the reason for not providing for a left turn from Keystone Avenue into the Ensley Drive is because of an accepted practice that a cut in a divider strip on a heavily traveled section of a highway could be no closer than 400 or 500 feet of the center point of the intersection.

The State introduced further evidence to show that the purpose of the divider strip is to control the flow

of traffic from north to south, including the left turn lane into the Glendale Shopping Center, which is 500 feet south of the center point of the intersection of 62nd Street and Keystone Avenue. There is a similar traffic arrangement at the 62nd Street and Keystone Avenue intersection to allow northbound traffic to make a left turn. That the original plans called for no curb cut at 61st Street and there is no place between 61st and 62nd Street where northbound traffic can make a left turn.

"The Eminent Domain Act of 1905, as amended, sets out the measure of damages in condemnation proceedings. Under the Act every element of damage which will ordinarily and naturally result from the taking of property may be considered." 11 Ind. Law Encyc., Eminent Domain, §51, p. 608. See also: *State* v. *Ahaus* (1945), 223 Ind. 629, 634, 63 N. E. 2d 199; *State* v. *Stabb* (1948), 226 Ind. 319, 323, 79 N. E. 2d 392.

It is well-settled that acts done in the proper exercise of governmental powers and not directly encroaching on private property, although their consequences may impair its use or value, do not constitute a "taking" within the purview of the constitutional provision prohibiting taking of private property for public use without just compensation.[3] Any injury so caused is deemed to be remote and inconsequential, and thus not compensable in the absence of an express statute to the contrary. *Brown* v. *State* (1937), 211 Ind. 61, 67, 5 N. E. 2d 527; *Morris* v. *City of Indianapolis* (1911), 177 Ind. 369, 385, 94 N. E. 705. Appellees contend, however, that §3-1706, Fourth, *supra,* is such a statute.

This court has also held that where an abutting property owner suffers damages as a result of the

---

3. Constitution of Indiana, Art. 1, §21.

change or alteration in the grade of a highway, such injury is too remote and inconsequential to be compensable. It has also been held that the mere change in the grade of a highway alone, without the appropriation of any additional real property for the right of way, does not come within the Eminent Domain Statute. There is no "taking" involved, even though some interference with the use and enjoyment of an abutting property may result from a change of grade. *State* v. *Patten* (1936), 209 Ind. 482, 490, 199 N. E. 577.

Paragraph Fourth of §3-1706, *supra,* of the Eminent Domain Act has broadened the common law conception of "just compensation" and by implication has included other elements of condemnation besides the actual "taking" of the physical property itself. However, the cases which have considered the application of paragraph Fourth of §3-1706, *supra,* have inherent limitations which may be implied from the respective facts involved in each of them.

*State* v. *Ahaus, supra* (1945), 223 Ind. 629, 63 N. E. 2d 199, was a case in which surface water was caused to collect on the residue of the condemnees' land as a direct result of the manner in which the highway was constructed. In this case consequential damages under paragraph Fourth, §3-1706, *supra,* were limited to the effect the collecting of surface water might have upon the use and future enjoyment of that part of appellees' land not taken but which was covered by surface water because of the manner of construction of the highway.

*State* v. *Stabb, supra* (1948), 226 Ind. 319, 79 N. E. 2d 392, concerned the widening of a highway which resulted in the loss of business and profits caused by the taking of a tract of land upon which appellees' business was situated. In this case appellees relied upon

the fourth clause of §3-1706, *supra,* and damages were limited to those which occurred as a direct consequence of the destruction of appellees' business due to the construction of the highway.

At page 323 of 226 Ind. this court said:

"It is generally held that no damages should be allowed in a case of this kind for loss of business, good will or profits from the business where only the land and not the business is being taken unless the statute under which the proceedings is had provides for such an element of damage. See 18 Am. Jur., *Eminent Domain* §§259, 261; 29 C. J. S., *Eminent Domain* §162; *Mitchell* v. *United States* (1924), 267 U. S. 341, 69 L. ed. 644, 45 S. Ct. 293; 2 Lewis, *Eminent Domain* (3rd ed.), §727; 41 A. L. R. 1026 Note."

And at page 324 further said:

"Clauses one, two and three of this section cover all the damages sustained by the property taken and the residue; therefore, clause four must refer to damages other than damages to the property involved. It includes *any direct consequential damages* suffered by any person due to the construction of the improvement." (Our italics.)

The present case is clearly distinguishable from the Stabb and Ahaus Cases as will presently appear.

In order to recover for the alleged impairment of their right of access appellees must suffer a particular private injury, and not merely an inconvenience or annoyance, even though it may be greater in degree than such as is suffered by the public generally. *Lowe* v. *City of Lawrenceburg* (1912), 177 Ind. 629, 630, 98 N. E. 637; *Dantzer et al.* v. *The Indianapolis Union Railway Co.* (1895), 141 Ind. 604, 614, 39 N. E. 223, 50 Am. St. Rep. 343, 34 L. R. A. 769; *The Indiana, Bloomington and Western Railway Com-*

*pany* v. *Eberle* (1887), 110 Ind. 542, 549-550, 11 N. E. 467, 59 Am. St. Rep. 225. Cf.: *State* v. *Smith et ux.* (1957), 237 Ind. 72, 143 N. E. 2d 666.

In *Dantzer et al.* v. *The Indianapolis Union Railway Co.*, *supra*, appellants owned certain lots in the City of Indianapolis which were situated on Illinois Street between McNabb and South Streets. Illinois Street runs north and south and McNabb and South Streets run east and west within the city. Appellants operated a hotel on such lots. The appellee, Railway Company, procured the vacation of a certain part of Illinois Street and a strip off McNabb Street immediately north of appellants' property so that its station house and car sheds could be improved, enlarged and relocated over a part of that portion of the street which had been vacated. Such action forced southbound traffic in this area to pass through a tunnel beneath the surface of Illinois Street, the north entrance of which was just north of appellees' buildings and the south entrance of which was at South Street, thus forcing the traffic on Illinois Street to pass under the structures which had been built on the vacated part of Illinois Street.

"The changes occasioned by vacating the streets named have required persons who might desire to reach the property of the appellants from north Illinois Street, . . . to travel . . . the more circuitous route by the way of Meridian [one block east of Illinois Street] and McNabb or South Streets, and in traveling McNabb Street to be limited to the south sidewalk or to the street bed narrowed to twenty-five feet."

Appellants there contended that by the change in construction of the street and the vacation of certain parts thereof, their right of access as abutting property owners had been so impaired as to entitle them to compensation. While this court conceded that the facts in the

record showed that appellants had suffered inconvenience and annoyance, it held that this did not amount to a compensable appropriation of the right of access. That ingress and egress was made more circuitous and difficult did not of itself constitute a "taking" of private property.

This seems to us to be an analogous situation to that of appellees in the case at bar. As we have already stated, the effect of the divider strip in Keystone Avenue is to prevent northbound traffic from turning directly into appellees' property. Such traffic is now compelled to continue to the intersection of Keystone Avenue and 62nd Street where it must make a left turn and travel approximately one-half block to the entrance of appellees' property on 62nd Street.

The fact that access to appellees' property from Keystone Avenue may have been made more circuitous and inconvenient by the manner in which the improved highway was constructed does not, upon the record here, constitute a "taking" of private property.

A property owner is not entitled to unlimited access to abutting property at all points along the highway. *Wilson v. Iowa State Highway Commission* (1958), 249 Iowa 994, 90 N. W. 2d 161, 168.

Neither does the fact that access to appellees' property by northbound traffic on Keystone Avenue has been rendered more circuitous and inconvenient sustain a compensable taking under paragraph Fourth of §3-1706, *supra,* of the Eminent Domain Act.

Damages which may be caused by the construction of an improvement in the manner proposed by the condemnor, in order to be compensable under paragraph Fourth of §3-1706, *supra,* must result directly from the taking of some property right.

" 'Property' in its legal sense means a valuable right or interest in something rather than the thing itself, and is the right to possess, use and ■ dispose of that something in such a manner as is not inconsistent with law. *Department of Financial Institutions* v. *Holt* (1952), 231 Ind. 293, 303, 108 N. E. 2d 629, 634; *Meek* v. *State* (1933), 205 Ind. 102, 105, 185 N. E. 899." *Department of Insurance, et al.* v. *Motors Insurance Corp., et al., etc.* (1956), 236 Ind. 1, 12, 138 N. E. 2d 157, 163. See also: 11 Ind. Law Encyc., Eminent Domain, §33, pp. 593, 594.

In *State* v. *Ahaus, supra* (1945), 223 Ind. 629, 63 N. E. 2d 199, the damage occasioned by the method of construction of the highway resulted in a material interference in the *use* of appellees' property because the changing of the roadbed had caused surface water to collect on a certain portion of appellees' land, thus depriving them of the use of the land so long as it was covered with water.

The question raised under paragraph Fourth, §3-1706, *supra*, in the Stabb Case pertained to damages suffered by reason of the destruction of appellees' business.

In the Dantzer Case no property right was taken as the result of the method of construction of the street. Hence, the damages to appellees there, if any, were not compensable.

We recognize the rule that an abutting property owner has an easement of ingress and egress in a public highway and this constitutes a property right ■ which cannot be substantially or materially interfered with or taken away without due compensation. *State, etc.* v. *Marion Circuit Court, et al.* (1958), 238 Ind. 637, 643, 153 N. E. 2d 327; *Huff, et al.* v. *Indiana State Highway Commission* (1958), 238 Ind. 280, 286, 149 N. E. 2d 299; *Martin* v. *Marks* (1900), 154 Ind. 549, 556, 57 N. E. 249; *Lostutter* v. *City of Aurora,*

*et al.* (1891), 126 Ind. 436, 438, 26 N. E. 184, 12 L. R. A. 259; *The Town of Rensselaer* v. *Leopold* (1886), 106 Ind. 29, 31, 5 N. E. 761; *Ewbank, Trustee* v. *Yellow Cab Co.* (1925), 84 Ind. App. 144, 153, 149 N. E. 647. Cf.: *Bickel* v. *Indiana Toll Road Commission* (D. C. N. D. Ind. 1956), 145 F. Supp. 257.

However, the condemnation of a part of appellees' land for the widening of Keystone Avenue has no causal connection with the alleged impairment of their right of access merely because, at the same time that their property was taken and the highway improved, divider strips were also constructed on the highway.

In this case the alleged impairment of appellees' easement of ingress and egress is clearly not caused by the condemnation and taking of their *land* since *it* was taken in order to widen the highway. Hence, any damages which they may recover for the interference with their right of access cannot be recovered under Clauses one, two or three of §3-1706, *supra,* but must be recovered, if at all, under the provisions of paragraph Fourth of §3-1706, *supra.*

The widening of the highway followed by its subsequent transformation into a highway with a divider strip in the center, though contemporaneous and part of the same construction program, are separate improvements with respect to the appropriation of appellees' property. The property taken for the widening of the highway consisted in the physical taking of land, while the alleged impairment, if any, of appellees' right of access, by the construction of the divider strip, was merely the result of depriving northbound traffic of the opportunity to enter appellees' property directly from Keystone Avenue. This does not constitute a taking of appellees' property within the law of Eminent Domain.

*Third:* What appellees are actually contending here
is that they have a property right in the free and unre-
stricted flow of traffic passing their premises and
■ any impairment of, or interference with, this
alleged right must be compensated. They here
are attempting to equate this alleged "right" with the
property right of ingress and egress. The general rule
is that there is no property right of an abutting prop-
erty owner in the free flow of traffic past his property
and thus no compensation can be claimed if traffic is
diverted from his premises or made to travel a more
circuitous route. *Warren* v. *Iowa State Highway Com-
mission* (1958), 250 Iowa 473, 93 N. W. 2d 60, 65;
*Walker* v. *State* (1956), 48 Wash. 587, 295 P. 2d 328,
331; *In re Appropriation of Easements for Highway
and Slope Purposes* (1955), 101 Ohio App. 1, 137 N. E.
2d 595, 598; *Jones Beach Boulevard Estate, Inc.* v.
*Moses, et al.* (1935), 268 N. Y. 362, 197 N. E. 313, 315,
100 A. L. R. 487.

No private property of appellees has been taken from
them as a result of the construction of the divider strip.
It is true that such strip affects the access to their prop-
erty by preventing the free flow of northbound traffic
directly into it from Keystone Avenue. Some of this
traffic may even be diverted from their premises and
all northbound traffic on Keystone Avenue is compelled
to follow a more circuitous route in order to reach Little
America. Even though such inconvenience to the public
may result in some damage to appellees' business, such
damage is not compensable because they have no prop-
erty right in the free flow of traffic past their place of
business.

The Supreme Court of Iowa recently had a similar
question before it in *Iowa State Highway Commission*
v. *Smith* (1957), 248 Iowa 869, 82 N. W. 2d 755, and

we believe the reasoning of the court there is particularly applicable to the present case here. At pages 761, 762 of 82 N. W. 2d, it is said:

"We have no difficulty in disposing of defendants' appeal from the part of the judgment holding the prohibition of crossing the highway, left turns and U turns except at designated points where there are no raised 'jiggle' bars does not constitute a taking of defendants' property within the law of eminent domain. The law on this phase of the controversy seems to be thoroughly settled by many recent decisions. . . .

"Such regulations as are imposed here on the movement of traffic are almost universally regarded as reasonable. They facilitate more travel by more motorists in less time. They eliminate left turns and U turns, restrict the number of places where motorists may enter and leave the highway and practically eliminate collisions between vehicles going in opposite directions. Thus they greatly reduce sources of danger.

"Insofar as the regulations may divert some traffic (mainly east bound) from defendants' filling station they have no legal cause for complaint. They have no vested right to the continuance of existing traffic past their establishment." (Citing authorities.)

Since appellees have no property right in the free flow of traffic past their premises, the construction of the divider strip does not deprive them of any property right, and, hence, any damage sustained thereby, by loss of business or depreciation in the value of their property, would not, for this further reason, be compensable under paragraph Fourth of §3-1706, *supra*.

This court takes judicial notice of the ever-increasing problems of traffic control with which a thriving metro-

politan area is confronted. The creation of such facilities as limited access highways, one-way streets, express thoroughfares and other methods of construction such as that involved in the present case, is to be encouraged in the interest of traffic control and regulation to the end that the general welfare and safety of the public may best be served.

Since the verdict of the jury included compensation for the alleged partial impairment of appellees' right of access resulting from the construction of the divider strip and since this was not a proper element of damages, the verdict was contrary to law.

The trial court also erred in giving defendants-appellees' Instruction No. 8, over the proper objection of the State. The owners of abutting real estate are not entitled to "egress and ingress to their premises *for the full length of the abutment of said [the] real estate upon such [a] highway.*" *Wilson v. Iowa State Highway Commission* (1958), 249 Iowa 994, 90 N. W. 2d 161, 168. Nor is an abutting property owner entitled to damages merely for "a partial limitation and obstruction" of the right of access. Such right must be *substantially or materially interferred with or taken away.* See authorities cited above on the subject of an easement of ingress and egress.

Since we have determined that appellees are not here entitled to recover any damages under the Eminent Domain Act because of an alleged interference with their right of access to their property, by reason of the manner in which Keystone Avenue was reconstructed, it is not necessary for us to decide the question as to whether or not the divider strip here in question was constructed under the police power of the State.

For the foregoing reasons the judgment of the trial court was contrary to law and must be reversed.

Judgment reversed with instructions to grant appellant's motion for a new trial.

Arterburn, C. J., Jackson and Landis, JJ., concur.

Achor, J., not participating because of illness.

NOTE.—Reported in 164 N. E. 2d 342.