STATE OF INDIANA *v.* JORDAN ET AL.

[No. 30,698. Filed March 22, 1966. Rehearing denied April 27, 1966.]

John J. Dillon, Attorney General, James Manahan, Deputy Attorney General, and Donald R. Ewers, Assistant Attorney General, for appellant.

Donald L. Adams, Donald R. Willsey, John P. Price, and Howell, Hamill & Price, of counsel, of Indianapolis, for appellees.

ARTERBURN, J.—This is an action in inverse condemnation by the appellees to recover damages arising from the taking of land by the State of Indiana for highway purposes. Judgment was rendered in favor of the appellees in the amount of approximately $13,000.00. The State appealed.

The State, by its objections, raised the issue as to whether a "taking" of real estate actually existed. This issue was decided adversely to the State when the court overruled the objections to the proceedings on that ground. The appellees now argue that no interlocutory appeal having been taken from this ruling, any error therein is waived and cannot be raised on appeal from the final determination of this case. However, we have ruled just recently to the contrary, the distinguishing feature being that in a proceeding for inverse condemnation such as this, an interlocutory appeal is not proper, but the question may be saved for determination upon a final appeal. Evansville-Vanderburgh L. A. D. v. Towne Motel, Inc. (1966), 247 Ind. 161, 213 N. E. 2d 705.

The facts in this case are that the State of Indiana purchased a 15-foot strip of land on the southeast corner of Keystone and 71st Street in Indianapolis on May 10, 1960 from the owner of the land. This was taken from a tract used as a parking lot by the appellees. The appellee-Jordan operated a drug store on a 40 x 70 foot building at the same

corner. Jordan had been using this building since March 6, 1956 to operate a drug store under a five year lease which was to expire January 31, 1961. On May 10, 1960 the State made the purchase from the then owner of the premises. At that time the appellees-lessors held "an extension" of the old lease which was executed on December 20, 1960 and which was to expire on March 1, 1962. The State took possession of the premises on February 1, 1961.

On November 18, 1961, after the taking of possession, the owner of the land and Jordan executed another lease between them covering the same property, which ran for 13 months from February 1, 1962 to February 28, 1963.

The question arising here is whether or not the lessor or tenant of the property operating the drug store on the 40 x 70 foot tract of land described in the lease, had any real estate or rights in real estate taken by reason of the action of the State of Indiana. It is contended that the leases involved covered the parking lot from which the 15-foot strip was taken, and that five parking spaces were thereby taken from the appellee-tenant. An examination of the lease shows that the real estate description is as follows:

> "The 70 Ft. by 40 Ft. building now being completed, located on the North West corner of Block 'A' in Creekwood Homes, . . .
> "Commonly known as 7069 N. Keystone Avenue, together with the rights, privileges and appurtenances to the same belonging to have and to hold the same for and during the term. . . ."

There is a reference in the lease also to a prohibition against permitting liquor to be drunk on the leased premises or "on the parking lots adjoining the same."

It would seem that there might be some basis for the assumption that the parking lot from which the State took a 15-foot strip was included in the original lease. However, it appears from the facts that if it were so included, then the extension or renewal of the lease, which was made on the 20th day of December, 1960, could

not have included such strip, since the owner at the time did not hold title to that strip, it having been previously deeded by the owner to the State on May 10, 1960. If the tenant's right to a renewal or extension had been violated, his remedy, it appears, would be against the landlord or owner of the land for making a lease covering grounds which he had previously conveyed away.

The appellant urges still another ground in support of the contention that the appellees had no interest in the real estate taken by the State, namely, that the option to renew was not enforceable or binding legally, since there was no fixed sum therein for rent. The option or renewal clause in the lease reads as follows:

"8. Lessees shall have an option to renew this lease for a five year term at a reasonable lease rental to be determined at the time, and in event of exercise of the option, Notice of Lessors' desire to exercise this option shall be in writing and in Lessors' hands not later than ninety days prior to the end of this lease." Appellant cites the cases of: *Habich* v. *University Park Bldg. Co.* (1912), 177 Ind. 193, 97 N. E. 539, and *Puetz et al.* v. *Cozmas et al.* (1958), 237 Ind. 500, 147 N. E. 2d 227.

An examination of these cases reveals that a lease, as in the case of all contracts, must be definite and certain as to the provisions, and that principle applies to the rental to be paid. The court cannot fix what is a "reasonable rental," since what is "reasonable" might appear to the lessor to be entirely different from that which appears to be reasonable from the lessee's position. Certain factors, such as taxes, repairs, etc., may be applicable to one or the other of the parties, along with other uncertain and indefinite circumstances that should or should not be taken into consideration, depending upon the ideas in the minds of the parties. Such intangible and indefinite matters the court cannot fathom and make certain. This is a thicket into which the courts have hesitated to venture when the parties themselves have failed to make the contract more certain. For the reasons

stated we find that the alleged option or renewal was not an enforceable instrument, and therefore the appellees had no legal interest in the property in question based upon any alleged renewal agreement. 32 Am. Jur., Landlord and Tenant, § 965, p. 810; 18 I. L. E., Landlord and Tenant, § 102, p. 238.

The next question is, assuming that no real estate or right in real estate has been taken from the tenant or owner of the land, is such a person, nevertheless, entitled to damages resulting to his business operated upon such land by reason of the construction or widening of the highway?

In this case the court permitted, over objection of the State, a large amount of testimony with reference to the pharmacy's gross profits during the period of construction of the highway. The appellee's accountant testified that the losses in net profits were proportionate to the reduction in gross profits. There was testimony with reference to certain employees being laid off and whether their salaries should or should not be included in the calculations of a net profit and just what the appellee-owner's value of his services were in the calculation of net profits. The court permitted certain witnesses to testify over objections that they spent specific amounts of money during the years prior to construction, and during construction they refrained from patronizing the plaintiff's pharmacy.

The question of damages to a business operated on real estate not taken by reason of the construction or repairs of a highway has plagued the courts of this and other jurisdictions for some time.

The case of *State* v. *Stabb* (1948), 226 Ind. 319, 79 N. E. 2d 392 seemed to recognize the principle that loss of profits in a business was compensable in an eminent domain proceeding, overruling certain prior cases cited in that opinion. However, the *Stabb Case* has been criticized and distinguished to such an extent that we feel that it no longer has any legal significance. *Elson* v. *City of Indianap-*

*olis* (1965), 246 Ind. 337, 204 N. E. 2d 857; *State v. Ensley et al.* (1960), 204 Ind. 472, 164 N. E. 2d 342.

We find it wise, in analyzing the cases in Indiana, to start with certain well recognized basic principles applicable to the question.

A "taking" in an eminent domain proceeding has been defined as taking any actual physical part of the real estate, as well as any important rights attached thereto. Certainly the blocking of egress from the property would be a compensable injury to the owner or lessor. However, a landowner is not entitled to damages for inconvenience suffered, such as that suffered by the community or public generally, where streets are being repaired, highways constructed or widened. A property owner who loses no real estate is normally not entitled to damages. All damages with reference to change in grade, the maintenance of the highway and such other matters that normally result from highway maintenance and construction were presumably included in the purchase price or damages paid when the highway was originally taken for public use. 11 I. L. E., Eminent Domain, § 33, p. 593; *Dantzer, et al. v. The Indianapolis Union Railway Company* (1895), 141 Ind. 604, 39 N. E. 223.

However, to cut a property owner entirely off from access to an abutting highway is an injury which is compensable unless such right was purchased or paid for originally when the highway was constructed as part of a limited access highway, as contemplated by the Acts of 1945, ch. 245, § 6, p. 1113, Burns' Ind. Stat. Anno. § 36-3106 (1949 Repl.). *State v. Hastings* (1965), 246 Ind. 475, 206 N. E. 2d 874.

A property owner, whose land does not abut on the highway is not entitled to compensation merely because the construction makes it more difficult to get to the highway. *State v. Tolliver* (1965), 246 Ind. 319, 205 N. E. 2d 672.

Likewise we have stated that the mere loss of flow of traffic along a highway caused by the State or a public authority in altering or changing the highway where no property is taken from an abutting owner, is not compensable in damages. *State* v. *Geiger & Peters, Inc.* (1964), 245 Ind. 143, 196 N. E. 2d 740.

It therefore follows that either some physical part of the real estate must be taken from the owner or lessor, or some substantial right attached to the use of the real estate taken before any basis for compensable damage may be obtained by an owner of real estate in an eminent domain proceeding. It must be special and peculiar to the real estate and not some general inconvenience suffered alike by the public.

When real estate is taken we have held that in order to determine the value of real estate taken or the rights connected therewith that have been unlawfully taken, that evidence of the volume of traffic going into the real estate is relevant and pertinent to its value. Even the gross sales of a business on a particular piece of real estate (but not the net profit or loss) have a relevancy to its value. The same has been said with reference to the gallonage of gasoline sold at a particular location. Net profits or net losses, as revealed in the case before us, have so many outside factors effecting them that they are not a proper criterion for the determination of the value of real estate on which such net profits or losses occurred. *State* v. *Hastings* (1965), 246 Ind. 475, 206 N. E. 2d 874.

In *State* v. *Ensley, et al.* (1960), 240 Ind. 472, 164 N. E. 2d 342 we held that a mere change in the grade or widening of the highway or the construction of a divider strip which changed the free flow of the traffic was not a "taking" within the purview of the state or constitutional provision.

In the case before us, as we previously stated, we find no actual property of the appellees has been taken. In our opinion, at the time appellees had no lease-hold interest in the 15-foot strip taken off of a parking lot.

For the reasons above stated, it was error for the trial court to permit the introduction of evidence relating to profits or losses in connection with the operation of the business of the appellees alleged to have occurred by reason of the widening of the highway in issue.

The judgment of the trial court is reversed.

Myers, C. J. and Rakestraw, J., concur. Jackson, J., concurs in result. Achor, J., not participating.

NOTE.—Reported in 215 N. E. 2d 32.