**W.C. BUSSING, Jr. and Bussing Construction Corp., Appellants–Plaintiffs,**

v.

**INDIANA DEPARTMENT OF TRANSPORTATION, Appellee–Defendant.**

**No. 82A01–0111–CV–433.**

Court of Appeals of Indiana.

Nov. 27, 2002.

Leslie C. Shively, Shively & Associates, Evansville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Frances Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

SULLIVAN, Judge.

Appellants, W.C. Bussing, Jr., and Bussing Construction Corp. (collectively "Bussing"), sued Appellee, the Indiana Department of Transportation ("INDOT"),[1] under the theory of inverse condemnation after INDOT informed Bussing of its intention to eliminate left-hand turns from State Road 66 onto Brentwood Avenue, which connects Bussing's apartment complex to S.R. 66. Following the trial court's judgment in favor of INDOT, Bussing presents two issues for our appellate review, which we restate as whether the trial court erred in concluding that there had been no compensable taking of Bussing's property.

We affirm.

The record reveals that Bussing owns the Fielding Court Apartments, which are

---

1. The use of "INDOT" refers not only to the Indiana Department of Transportation, but also to its predecessor, the Indiana Department of Highways.

located at the southwest corner of S.R. 66 and Brentwood.[2] State Road 66 runs east and west and is intersected by Brentwood, which runs north and south. Bussing began construction of these apartments in 1968, at which time S.R. 66 was a two-lane road known as Division Street. Brentwood runs adjacent to the east side of the apartment complex and provides access to S.R. 66 from the apartments. In 1984, INDOT began a project to enlarge S.R. 66 into a four-lane highway known as the Lloyd Expressway. As part of this process, INDOT initiated condemnation proceedings to acquire a strip of land owned by Bussing. As part of the expansion project, INDOT constructed a sixty-foot wide median on S.R. 66 at the Brentwood intersection. The median was constructed with left-hand turn lanes for both eastbound and westbound traffic on S.R. 66. Thus, a driver traveling in either direction on S.R. 66 was able to turn southbound onto Brentwood and access the Bussing property.

On March 19, 1986, INDOT informed Bussing of its intention to maintain the existing access to Brentwood. Through an agreed finding and judgment, filed on May 27, 1986, Bussing relinquished his interests in the property sought by INDOT and granted a temporary easement for highway right-of-way and easements of ingress and egress to, from, and across S.R. 66.

▆ On January 25, 1999, INDOT sent Bussing a letter informing him that it planned to eliminate the left-hand turn at the intersection of Brentwood and S.R. 66. Bussing eventually filed an amended complaint against INDOT on October 25, 1999, under the theory of inverse condemnation. The complaint requested that the trial court find that a taking of Bussing's property and access rights had occurred and requested an order directing the matter to proceed under Indiana's eminent domain statutes for an assessment of damages.[3] On August 6, 2001, the trial court held a trial on the issue of whether a taking had occurred. On October 16, the trial court entered findings of fact and conclusions of law in favor of INDOT, finding that no compensable taking had occurred.

▆ At Bussing's request, the trial court entered special findings and conclusions pursuant to Trial Rule 52. Our standard of review is therefore two-tiered: we determine whether the evidence supports the trial court's findings, and we determine whether the findings support the judgment. *Indianapolis Indiana Aamco Dealers Advertising Pool v. Anderson*, 746 N.E.2d 383, 386 (Ind.Ct.App.2001). We will not disturb the trial court's findings or judgment unless they are clearly erroneous. *Id.* Findings of fact are clearly erroneous when the record lacks any reasonable inference from the evidence to support them, and the trial court's judgment is clearly erroneous if it is unsupported by the findings and the conclusions which rely upon those findings. *Culley v.*

---

2.  The real estate parcel upon which the apartments were constructed was owned by Bussing Construction Corp. W.C. Bussing, Jr., in his individual capacity, along with his wife, owned a parcel immediately adjacent to the west.

3.  There are two stages in an inverse condemnation action. *Jenkins v. Board of County Comm'rs of Madison County*, 698 N.E.2d 1268, 1270 (Ind.Ct.App.1998), *trans. denied.* The first stage determines the issue of whether a compensable taking has occurred. *Id.* At this stage the landowner must show that he has an interest in land which has been taken for a public use without having been appropriated pursuant to eminent domain laws. *Id.* If the trial court, acting as finder of fact in the first stage, determines that a taking has occurred, the matter proceeds to the second stage, at which the court appoints appraisers and damages are assessed. *Id.* at 1270-71.

*McFadden Lake Corp.*, 674 N.E.2d 208, 211 (Ind.Ct.App.1996). In determining whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences to be drawn therefrom. *Gunderson v. Rondinelli*, 677 N.E.2d 601, 603 (Ind.Ct.App.1997). We will neither reweigh evidence nor judge the credibility of witnesses. *Anderson*, 746 N.E.2d at 386. Here, Bussing is appealing from a negative judgment, and therefore we will reverse the trial court only if the evidence is without conflict and all reasonable inferences to be drawn from the evidence lead to a conclusion other than that reached by the trial court. *Id.*

Although Bussing fashions his argument as consisting of two issues, his argument essentially is that several of the trial court's conclusions are erroneous. We will address each of Bussing's challenges to the trial court's conclusions in turn.

### Conclusion No. 1

■ Bussing challenges the trial court's Conclusion Number 1, which reads, "The Plaintiffs relinquished all access rights to State Road 66 from the real estates subject to this cause under judgments entered in Vanderburgh Superior Court in 1986." Appendix at 12. The trial court's conclusion appears to be recognition that Bussing relinquished his direct access rights to S.R. 66 to INDOT. This is supported by the language of the judgment itself,[4] and the testimony of Mr. Bussing, who testified

at trial that the 1986 judgment appropriated his right to access S.R. 66 directly from his property.

Bussing claims that the 1986 judgment and settlement preserved his right to access S.R. 66. Specifically, he claims that the judgment provided for "monetary consideration and the creation of a cross over at Brentwood Avenue and the widening of Brentwood Avenue for access." Appellant's Br. at 8. Bussing, however, does not cite to any portion of the 1986 judgment which supports his contention, nor does our review of this document reveal any such support. Instead, we note that the 1986 judgment twice provides that Bussing was to receive monetary compensation for land and property rights taken. Nowhere in the 1986 judgment do we find any reference to the creation of a crossover in the median or the widening of Brentwood as additional consideration offered to Bussing in exchange for the land and property rights taken.

In further support of his argument regarding the 1986 judgment, Bussing refers to that portion of the judgment which created cross easements between the property owned by Bussing Construction Corp. and W.C. Bussing, Jr., individually. The 1986 judgment did call for the creation of a permanent easement in favor of W.C. Bussing, Jr., across the north and west line of the Bussing Construction Corp.'s property to serve as a means of ingress and egress to the Fielding Court Apartments.[5] Bussing claims this was done to

---

4. In describing the appropriation, the 1986 judgment included, "the permanent extinguishment of all rights and easements of ingress and egress to, from, and across the limited access facility (to be known as S.R. 66 ...) to and from the owner's remaining lands where they abut the above-described real estate." Appendix at 41.

5. The pertinent portion of the 1986 judgment reads:
   "That defendant, Bussing Construction corp., shall record a permanent easement, in favor of W.C. Bussing, Jr., and Constance K. Bussing, across the property of Bussing Construction Corp. between Brentwood Avenue and the parcel of land owned by W.C. Bussing, Jr., and Constance K. Bussing as individuals, which property

prevent the westernmost parcel of land from being denied "total access" to S.R. 66. Appellant's Reply Br. at 2. We fail to see how the creation of this easement prohibits the elimination of left-hand turns from S.R. 66 onto Brentwood or from Brentwood onto S.R. 66 without further compensation to Bussing.

Mr. Bussing testified at trial that the possibility of INDOT eliminating the left-hand turn lane by constructing a median never came up during his negotiations with INDOT which resulted in the 1986 judgment. If such issues never arose at that time, we cannot see how the 1986 judgment prevented the State from modifying the flow of traffic on S.R. 66 without compensating Bussing. The evidence is not without conflict, and all reasonable inferences to be drawn from the evidence do not lead to a conclusion other than that reached by the trial court.

### Conclusion No. 2

■ Bussing challenges the trial court's second conclusion, which states:

> "The Plaintiffs' access to State Road 66 by way of Brentwood Avenue was never special or peculiar to the real estates subject to this cause; but, common to the general public and all property owners whose land abuts or is served by Brentwood Avenue, a dedicated city street that connects with other city streets." Appendix at 12.

■ The general rule is that, before any basis for compensable damage may be obtained by an owner of real estate in an eminent domain proceeding, either some physical part of the real estate must be taken from the owner or lessor, or some substantial right attached to the use of the

real estate taken; it must be special and peculiar to the real estate and not some general inconvenience suffered alike by the public. *Young v. State,* 252 Ind. 131, 134, 246 N.E.2d 377, 379 (1969), *cert. denied* 396 U.S. 1038, 90 S.Ct. 685, 24 L.Ed.2d 683 (1970); *State v. Jordan,* 247 Ind. 361, 368, 215 N.E.2d 32, 35 (1966).

Here, Bussing insists that the access from his apartment complex to S.R. 66 via Brentwood was special and peculiar. Bussing refers to evidence most favorable to his contention. However, we must consider upon appeal only the evidence favorable to the judgment and all reasonable inferences to be drawn therefrom. *Gunderson,* 677 N.E.2d at 603. Bussing simply invites us to reweigh the evidence and reach a different conclusion than did the trial court. We will not do so.

Moreover, Bussing admitted at trial and acknowledges upon appeal that Brentwood is a public thoroughfare used by other landowners south of the intersection. Although Bussing claims that this fact is irrelevant, we believe this supports the trial court's conclusion that the access from S.R. 66 via Brentwood was not special and peculiar to Bussing's apartment complex alone, but was a general convenience enjoyed alike by the public. *See Young,* 252 Ind. at 134, 246 N.E.2d at 379; *Jordan,* 247 Ind. at 368, 215 N.E.2d at 35.

Support for the trial court's conclusion may be found in *State v. Ensley,* 240 Ind. 472, 164 N.E.2d 342 (1960). In *Ensley,* no physical property was taken from the landowners. However, the result of the construction of a highway-divider strip affected the landowner's access to their property by preventing the free flow of northbound

---

touches on the north and west line of the Bussing Construction Corp. property. Said permanent easement is to serve as a means of ingress and egress to the apartments

situated on the W.C. Bussing, Jr., and Constance K. Bussing tract and shall run with the land." Appendix at 40.

traffic to the landowner's place of business from Keystone Avenue in Indianapolis. In fact, some of the traffic was diverted from the landowner's business and all north-bound traffic on Keystone was "compelled to follow a more circuitous route" to reach the landowner's business. 240 Ind. at 489, 164 N.E.2d at 350. The *Ensley* court held, "Even though such inconvenience to the public may result in some damage to appellees' business, such damage is not compensable because they have no property right in the free flow of traffic past their place of business." *Id.*

The *Ensley* court held that the general rule is that there is no property right of an abutting property owner in the free flow of traffic past his property, and thus, no compensation may be required if traffic is diverted from his premises or made to travel a more circuitous route. *Id.* In *Ensley*, the court also held that, because the landowners had no property right in the free flow of traffic past their premises, the construction of a highway divider strip did not deprive them of any property right, "and hence, any damage sustained thereby, by loss of business or depreciation in the value of their property, would not, for this further reason, be compensable under [Indiana's Eminent Domain Act]." 240 Ind. at 490, 164 N.E.2d at 350.

The same is true in the case at bar. The elimination of the left-hand turn from the median on S.R. 66 did not completely deprive drivers access to Bussing's apartment complex. As INDOT's witness Daniel Ritterscamp testified, the elimination of the turn lane simply requires drivers to travel a more circuitous route. Also, right-hand turns onto and from Brentwood are not prohibited. Therefore, we cannot say that the trial court's conclusion is clearly erroneous. *See Jordan,* 247 Ind. at 368, 215 N.E.2d at 35 (noting that mere loss of flow of traffic along a highway caused by the State in altering or changing the highway where no property is taken from an abutting owner is not compensable in damages).

In his reply brief, Bussing attempts to distinguish *Ensley* by claiming that unlike *Ensley,* in the present case, INDOT had acknowledged that Bussing's access to S.R. 66 was special and peculiar. However, as noted above, the evidence to which he refers does not favor the judgment, and may not be considered as outweighing evidence to the contrary. Also in his reply brief, Bussing, countering the State's argument, refers for the first time to Ind.Code § 8-23-8-3 (Burns Code Ed. Repl.2000), a section of a Chapter of the Indiana Code dealing with limited access facilities. Bussing claims this section requires compensation for acquisition of property and property rights for limited access facilities. Bussing did not present an argument based upon this statute in his appellant's brief, and he may not raise a new argument for the first time in his reply brief. *See Crossmann Communities, Inc. v. Dean,* 767 N.E.2d 1035, 1044 (Ind.Ct.App.2002) (issues presented for the first time in a reply brief are deemed waived).

Application of the doctrine of waiver to this situation could be debated. Assuming that S.R. 66 is indeed a limited access facility, Bussing's failure to make I.C. § 8-23-8-3 a specific basis for his claimed right of compensation would not be fatal, if in fact the statute were to clearly provide for compensation when traffic flow adjacent to the landowner's property is somewhat restricted. In such case we would be obligated to apply the relevant and controlling law to the facts. *Allied Structural Steel Co. v. State,* 148 Ind.App. 283, 296, 265 N.E.2d 49, 57 (1970). However, the statute does not so provide. It merely provides authority, in

broad terms, for the acquisition of "property rights ... including rights of access...." I.C. § 8–23–8–3. Its purpose is to promote the relatively unimpeded flow of traffic upon such highway facilities. It does not assure compensation to landowners for every deviation from the status quo.

Bussing claims that the cases of *State v. Diamond Lanes, Inc.,* 251 Ind. 520, 242 N.E.2d 632 (1968) and *State v. Raymond E. Heinold Family Trust,* 484 N.E.2d 595 (Ind.Ct.App.1985), *trans. denied,* support his claim in that these cases recognize where a landowner suffers a substantial and material impairment of the right to reasonable access, not necessarily a total loss of access, a compensable taking occurs. In *Diamond Lanes,* however, the trial court rendered a judgment in favor of the landowners; and the State was the appealing party. Thus, *Diamond Lanes* was not before the court on the same standard of review as is the present case. *See* 251 Ind. at 524, 242 N.E.2d at 634 (holding that there was substantial evidence to support the finding that the landowner-appellee's access was substantially and materially impaired).

Moreover, the extent of the deprivation of access in *Diamond Lanes* was far greater than in either *Ensley* or the present case. In *Diamond Lanes,* the land in question had no access by means of either the north or west property lines. However, there was access to Highway 41 at the extreme northern edge of the property. Also, there were three access points to Diamond Avenue along the southern property line: one on Diamond Avenue near the southeastern corner of the land, and two other access points to Diamond Avenue along the southern property line. Traffic going to and from Diamond Lanes could turn in either direction on Highway 41 and either east or west onto Diamond Avenue at any of the three southern access points.

Following the construction of a new Diamond Avenue Limited Access Highway, there was no access to Highway 41, and the main access point near the southeastern corner of the property was completely eliminated. The two remaining access points along the southern boundary no longer accessed Diamond Avenue at all, but instead exited to a frontage road, which eventually led to the westbound lanes of Diamond Avenue. Eastbound traffic on Diamond Avenue could no longer directly access the owner's land. To get to Highway 41 from these remaining access points required drivers to go approximately one mile farther than before. The *Diamond Lanes* court concluded that the evidence showed that the owner's access had been materially and substantially obstructed and reduced, and affirmed the trial court's judgment. 251 Ind. at 523–24, 242 N.E.2d at 634.

Here, prior to the construction, Bussing had no direct access to S.R. 66, but instead had access via Brentwood. The same remains true following INDOT's project. Unlike the owner in *Diamond Lanes,* Bussing's direct access was unaffected. In *Diamond Lanes* the remaining access could "in no way be equated with the former access to Diamond Avenue...." 251 Ind. at 524, 242 N.E.2d at 634. In the present case, access to S.R. 66 still exists from Brentwood, and there was evidence that the elimination of left-hand turns still left Bussing's property with reasonable access. Thus, the present case is more akin to *Ensley,* wherein the construction of a median prevented northbound traffic on Keystone Avenue from directly accessing the owner's property and was required to follow a more circuitous route. *See* 240 Ind. at 489, 164 N.E.2d at 350.

In *Heinold*, the issue was the proper determination of damages, not whether a taking occurred. The *Heinold* court reversed the jury's award of damages upon the ground that there was no probative evidence regarding the after-taking value of the land taken. 484 N.E.2d at 598. In response to the State's argument regarding the trial court's decision to not enter a judgment on the evidence, the *Heinold* court cited the limited access highway statute and held that there was substantial evidence that the landowner in that case suffered a compensable loss through a taking by the State, and that, therefore, judgment on the evidence would have been inappropriate. *Id.* at 599. Neither of these cases convince us that the trial court's conclusion must be reversed.

*Conclusion No. 3*

■ The trial court's third conclusion read, "Expert testimony with regard to State Road 66, a limited access four-lane highway,[6] shows that left-hand turns to and from Brentwood Avenue south of State Road 66 impaired traffic safety and that a traffic signal to regulate such turns was not warranted by traffic volumes." Appendix at 12. Bussing claims that this conclusion is irrelevant. Bussing does not explain why an irrelevant conclusion would require us to reverse the trial court. Be that as it may, we do not agree with Bussing that the trial court's conclusion is irrelevant.

As INDOT notes, our Supreme Court has recognized that safety concerns are relevant to the issue of whether a taking has occurred. In *Ensley*, the court stated:

"This court takes judicial notice of the ever-increasing problems of traffic control with which a thriving metropolitan

area is confronted. The creation of such facilities as limited access highways, one-way streets, express thoroughfares and other methods of construction such as that involved in the present case, is to be encouraged in the interest of traffic control and regulation to the end that the general welfare and safety of the public may best be served." 240 Ind. at 490–91, 164 N.E.2d at 350–51.

The *Ensley* court also quoted the Supreme Court of Iowa, which had held that the prohibition of crossing a highway, left-hand turns, and U-turns " 'except at designated points ...' ". does not constitute a taking of defendants' property within the law of eminent domain, and that such regulations " 'are almost universally regarded as reasonable.' " 240 Ind. at 490, 164 N.E.2d at 350 (quoting *Iowa State Highway Comm'n v. Smith*, 248 Iowa 869, 82 N.W.2d 755 (1957)). Thus, the trial court's third conclusion simply notes that there were traffic safety concerns regarding maintaining the existing access from Brentwood to S.R. 66.

*Conclusion No. 4*

■ Bussing's next challenge is to the trial court's fourth conclusion of law, which reads, "Expert testimony also shows the public now has reasonable access to the real estates subject to this cause by way of Brentwood Avenue, Fielding and Burkhardt intersections with State Road 66 and a grid of city streets." Appendix at 12–13. Bussing first claims that the fact that Brentwood is a public street and that other landowners have access to it is irrelevant to the issue of whether a taking has occurred. Again, Bussing fails to explain how he was harmed by an irrelevant conclusion. However, we again do not agree

---

6. The trial court's use of the term "limited access ... highway" does not dictate that upon review this court apply the provisions of I.C. § 8–23–8–3, nor that we hold Bussing entitled to compensation pursuant to it.

that this conclusion is irrelevant. As noted above, the fact that others use Brentwood to access S.R. 66 is relevant to the issue of whether or not the limitation of Bussing's access to S.R. 66 via Brentwood was special and peculiar or a general inconvenience suffered alike by the public. *See Young,* 252 Ind. at 134, 246 N.E.2d at 379; *Jordan,* 247 Ind. at 368, 215 N.E.2d at 35; *Ensley,* 240 Ind. at 489, 164 N.E.2d at 350.

■ Bussing also claims that there are no findings or evidence to support the trial court's conclusion that the public still has reasonable access to Bussing's apartment complex following the elimination of the left-hand turn lane. Bussing acknowledges that INDOT's witness, Mr. Ritterscamp, testified that the resulting access to S.R. 66 was reasonable. Nevertheless, Bussing claims that the question of reasonableness must be determined in the context of a real estate valuation. Bussing claims that the only real estate valuation evidence presented was the testimony of his expert witness, Kenneth Hanson, who testified that the elimination of the left-hand turn negatively affected the value of his property. In support of his position, Bussing cites *State v. Peterson,* 269 Ind. 340, 381 N.E.2d 83 (1978), *Diamond Lanes, supra,* and *Heinold, supra.* Our review of these cases reveals that although *Diamond Lanes* considered the reasonableness of the access, it did not imply the concept was only relevant in the context of a real estate evaluation. *Peterson* and *Heinold* do, however, contain a discussion of the reasonableness of a landowner's access in the context of eminent domain.

In *Peterson,* the State filed an eminent domain action against the owner of triangular shaped land bordered on one side by old U.S. Highway 30, on the second side by the then-new U.S. 30, and on the third side by the land of another owner. The land had no established entrances onto either highway but had access to both. As a result of the State's taking, the landowner-defendant had no access to the new highway, but left his access to the old highway as it had been. The jury returned a verdict in favor of the landowner. The State appealed, claiming error in the trial court's refusal to give a tendered instruction which stated, "Loss of access is compensable and may be considered by you in determining the damages to be awarded the defendants only when such loss of access is special and peculiar to this property, [a]nd only when no other reasonable means of access is available to the property." *Peterson,* 269 Ind. at 341, 381 N.E.2d at 84. The Third District of this court reversed, holding that the trial court should have given the requested instruction. *State v. Peterson,* 364 N.E.2d 767 (Ind.Ct.App. 1977), *trans. granted, opinion vacated.* Our Supreme Court granted transfer, and affirmed the trial court's refusal. *Peterson,* 269 Ind. at 344, 381 N.E.2d at 85.

In *Peterson,* our Supreme Court recognized that it had previously held that it was not error to give an identical instruction in *Beck v. State,* 256 Ind. 318, 268 N.E.2d 746 (1971). The *Peterson* court noted, however, that a concurring opinion in *Beck* criticized the instruction and pointed out its potential to mislead the jury. 269 Ind. at 342, 381 N.E.2d at 84. The critical portion of the instruction was, according to the *Peterson* court, the concluding phrase regarding reasonable means of access to the property, to which no objection had been made in *Beck.* 269 Ind. at 343, 381 N.E.2d at 84. The *Peterson* court wrote:

"It is true that whether the landowner is left with reasonable access to his realty bears greatly upon whether he had indeed suffered special injury. However, it must be borne in mind that his dam-

age entitlement is to be based upon the highest and best use of the property at the time of the taking. Thus, if the highest and best use before the taking was for one purpose, and because of the access available after the taking, the property was no longer suitable for that use, but was still suitable for a less valuable use, the owner would be entitled to the damages reflecting the diminished value." 269 Ind. at 343, 381 N.E.2d at 85.

The court held that the instruction requested by the State was susceptible to having the phrase "other reasonable means of access" misunderstood, and that the instruction should have included language informing the jury that this phrase referred to "[o]ther access that will permit the land to be used for that purpose regarded as its highest and best use immediately before the take." *Id.*

In *Peterson,* however, that there had been a taking was not in question. Instead, the language of the instruction was directed at determining damages resulting from the State's taking. 269 Ind. at 341, 381 N.E.2d at 84. In the case at bar, the question of whether a compensable taking occurred is at issue. This question must be determined before any question of damages becomes appropriate. *See Jenkins v. Board of County Comm'rs of Madison County,* 698 N.E.2d 1268, 1270 (Ind.Ct. App.1998) (noting the bifurcated nature of inverse condemnation actions), *trans. denied.*

Furthermore, *Peterson* does not stand for the proposition that the trial court must accept the opinion of a witness regarding the reasonableness of access simply because it is made in the context of a real estate valuation. Nor does *Peterson* require the trial court to ignore the opinion of INDOT's witness regarding the reasonableness of the access after the elimi-

nation of the left-hand turn because the opinion was not made in the context of a real estate valuation. More importantly, our review of the record reveals that Bussing's witness did not testify regarding the "reasonableness" of the access to S.R. 66 from the Bussing property following the elimination of the left-hand turn. Instead, he testified that the highest and best use of the property had been diminished by the modification of S.R. 66.

In *Heinold,* the court cited *Peterson,* and held that it was proper for an appraiser to have determined the value of the property at issue before the taking by applying the "highest and best use criterion." 484 N.E.2d at 598. The *Heinold* court also held that without any evidence of the after-taking value of the property, the jury was unable to properly determine the extent of damages. *Id.* As in *Peterson,* the issue in *Heinold* was the proper determination of damages, not whether a taking occurred. We find nothing in *Heinold* to support Bussing's contention that the trial court could not consider the opinion of INDOT's expert when arriving at a conclusion regarding the reasonableness of the current access to S.R. 66 from the Bussing property.

There was evidence produced at trial from which the trial court could conclude that the Bussing property had reasonable access to S.R. 66 following INDOT's modification. Mr. Ritterscamp's testimony indicated that there were alternate routes which connected Bussing's property to S.R. 66. Among these alternatives was driving westbound on S.R. 66 until the intersection with Fielding Road, where a left-hand turn signal allows for safe, "protected" U-turns onto eastbound S.R. 66, where right-hand turns onto Brentwood remain unfettered. Additionally, Mr. Ritterscamp testified to other, albeit more circuitous, routes by which Bussing's prop-

erty was accessible, including connection with the grid of city streets. Mr. Ritterscamp's opinion was that all of the landowners on the south side of intersection of S.R. 66 and Brentwood would have access that was reasonable based upon the traffic volume of the area.

■ Although the opinions of the witnesses may have been relevant to the ultimate issue of the reasonableness of the remaining access to Bussing's property, they were not dispositive, as the trial court was not bound to accept the opinion of either INDOT's or Bussing's witnesses. In the end, the question of reasonableness was for the trial court to decide. The trial court is assumed to know and follow the law, and we must therefore assume that the trial court's decision regarding the reasonableness of access was made in the appropriate context. *See Boone County Rural Elec. Membership Corp. v. Layton,* 664 N.E.2d 735, 739, (Ind.Ct.App.1996) (Court of Appeals will presume the trial courts know and will follow the law), *trans. denied.* The evidence is not without conflict and all reasonable inferences to be drawn from the evidence do not lead to a conclusion other than that reached by the trial court.

### Conclusion No. 5

■ Lastly, Bussing challenges the trial court's fifth conclusion of law, which reads, "The witnesses agree that no land was taken for the road project described in this cause, and the parties had no contract that precluded median construction." Appendix at 13. Although Bussing is correct that an actual; physical taking of property is not required for there to be a compensable taking, a physical taking of land does require compensation under Indiana's eminent domain statutes. *See* Ind.Code § 32–24–1–9 (Burns. Code Ed. Repl.2002). Mr. Bussing testified that no land or improvements were taken as a result of the modification of S.R. 66, and we find no fault in the trial court for noting that no such taking occurred.

As to the second portion of the trial court's conclusion, Bussing complains that "[t]here is absolutely no Indiana authority for the proposition that a landowner is required to prove the existence of a contract, which would have prevented modification of an intersection in order to be entitled to compensation." Appellant's Br. at 11. Be that as it may, we do not believe the trial court's conclusion stands for such a proposition. The trial court appears to have been responding to Bussing's claim that the 1986 judgment somehow precluded the modification of the intersection. Bussing claims that the 1986 judgment was an "acknowledgment and admission" that his access to S.R. 66 was special and peculiar, "and that so long as that the [sic] access remained unencumbered that the consideration paid in 1986 was adequate but that any further encumbrance to that access would require further compensation." *Id.*

As set forth above, our review of the 1986 judgment reveals no such acknowledgment or admission. The 1986 judgment did not guarantee to Bussing the maintenance of his then-existing access rights to S.R. 66 in perpetuity. In his reply brief, Bussing clarifies that he is not contending that the prior judgment preserved indefinitely his access rights, but merely is evidence of the special and peculiar access to S.R. 66 from his property. We have determined that the trial court did not err in concluding that the access limitation to S.R. 66 was not special and peculiar to Bussing's property, but was a general inconvenience suffered by the public. Bussing again asks us to review the evidence supporting his position and reach a different conclusion than did the trial

court. We will not do so. In sum, we find no error in the trial court's conclusion number five, as the evidence was not without conflict, and all reasonable inferences to be drawn from the evidence do not lead to a conclusion other than that reached by the trial court.

The judgment of the trial court is affirmed.

BAILEY and MATHIAS, JJ., concur.