**Paul WILFONG, Appellant–Plaintiff,**

v.

**The CESSNA CORPORATION, Appellee–Defendant.**

No. 47A01–0310–CV–406.

Court of Appeals of Indiana.

Aug. 3, 2004.

Charleyne L. Gabriel, Kunz & Opperman, P.C., Indianapolis, IN, Attorney for Appellant.

Jennifer A. Tucker, Tucker and Tucker, P.C., Paoli, IN, Attorney for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Plaintiff, Paul Wilfong (Wilfong), appeals the trial court's Findings of Fact and Conclusions of Law in favor of Appellee–Defendant, The Cessna Corporation (Cessna Corporation), denying Wilfong's Complaint of the existence of a prescriptive easement.

We reverse.[1]

### ISSUE

Wilfong raises three issues on appeal, which we consolidate and restate as follows: whether the trial court erred by refusing to grant Wilfong a prescriptive easement because he failed to establish that the use of the property at issue was actual, hostile, open, notorious, continuous, uninterrupted, and adverse for a period of twenty years under a claim of right.

### FACTS AND PROCEDURAL HISTORY

Since 1944, Leroy Inman (Inman) owned approximately two hundred landlocked acres in Lawrence County, Indiana, and at a later date, purchased an adjacent forty acres (collectively, Wilfong Property). Contiguous to the southwest side of the Wilfong Property lies one hundred point nine acres, currently belonging to the Cessna Corporation (1953 Cessna Property). By Inman's earliest memory, this property was originally owned by Pearl and Clarence Roberts (the Robertses),

who sold the property to Onie McPherson (McPherson). McPherson's son and daughter-in-law, Lina, lived on the property in the 1940s. In 1953, the McPhersons moved out and the land was purchased by Donald Cessna.

Bordering on part of the southwest side of the 1953 Cessna Property, is eighty nine point one acres (Inman Property) owned by Inman and his sister, Loraine Schlieper (Schlieper). Inman, who lived more than eighty years on this property, inherited the land, together with his sister, from his aunt, who in turn had inherited the land from Minnie Mavity (Mavity). In 2003, the Inman Property was transferred by contract to the Spreen Farm Partnership. Contigious to the southwest side of the Inman Property, lies one hundred and eighty-seven point five acres owned by the Cessna Corporation (1980 Cessna Property). The 1980 Cessna Property was originally owned by Henry Cox (Cox), Mavity's father, who also devised the southernmost part of the Inman Property to Mavity upon his death in 1910. At some point, the 1980 Cessna property belonged to Harold and Frances Cessna. Harold Cessna was the grandson of Mavity's brother. Subsequently, in 1980 Donald Cessna purchased the land from his parents.

All properties at issue are landlocked, with the exception of the 1980 Cessna Property, formerly owned by Cox. Consequently, in his will, Cox granted an express easement over what is now the 1980 Cessna Property for the benefit of the Inman Property. The will described the easement as being twenty feet wide and to be used for farm purposes only. The Spreen Farm Partnership, as the current equitable owners of the Inman Property, acquired the easement rights appurtenant

1. We hereby deny Appellant's Request for Oral Argument.

to the property through Cox' will. However, continuing northwards from the Inman Property, a dirt roadway (Roadway) links the Inman Property, over the 1953 Cessna Property, to the Wilfong Property. Together with the deed of conveyance of the Wilfong Property to Wilfong in October of 1998, Inman attempted to convey an Access Easement, granting Wilfong a perpetual, non-exclusive, fifty feet wide easement for ingress and egress, which is comprised of the express easement and the Roadway.

Immediately after Wilfong's purchase of the Wilfong Property, the Cessna Corporation locked the gate going from its 1953 Cessna Property to the Wilfong Property, preventing Wilfong's access to his property over the Roadway. Consequently, on November 18, 1998, Wilfong filed a Complaint, asserting a prescriptive easement appurtenant to his property over the 1980 Cessna Property, the Inman Property, and the 1953 Cessna Property. On November 30, 1998, the Cessna Corporation filed its Answer to the Complaint. Subsequently, on July 8, 2003, after both parties filed their Pretrial Contentions of Fact and Law, a bench trial was held. During the trial, Wilfong conceded that he only sought the right to use the Roadway by virtue of a prescriptive easement. He did not claim an easement resulting from the Access Easement, Cox' will, or necessity. Following the trial, both parties filed their Proposed Findings of Fact, Conclusions of Law and Judgment. On September 18, 2003, the trial court entered its Findings of Fact, Conclusions of Law and Judgment[2], denying Wilfong's Complaint.

Wilfong now appeals. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

Wilfong contends that the trial court erred by refusing to accept the existence of a prescriptive easement appurtenant to the Wilfong Property as the dominant estate over the servient estates of the 1953 Cessna Property, the Inman Property, and the 1980 Cessna Property. Specifically, Wilfong asserts that the trial court erred when it determined in its findings that Inman's use of the Roadway was never hostile or under any claim of right. Instead, the trial court concluded that Inman traveled the Roadway across the 1953 Cessna Property, in between his property and the Wilfong Property, by permission of the Cessna Corporation and its predecessors in title.

### I. Standard of Review

When, as here, the trial court enters findings of fact and conclusions thereon, we apply the following standard of review: we must determine whether the evidence supports the findings and whether the findings support the judgment. See Ballard v. Harman, 737 N.E.2d 411, 415 (Ind. Ct.App.2000), reh'g denied. The court's findings and conclusions will be set aside only if they are clearly erroneous, that is, that the record contains no facts or inferences supporting them. See id. A judgment is clearly erroneous when a review of the record leaves us with the firm conviction that a mistake has been made. Id. We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. Id.

### II. Prescriptive Easement

#### A. Existence of a Prescriptive Easement

█ First, Wilfong maintains that the trial court erred in determining that Inman's use of the Roadway was not adverse and hostile. Rather, the trial court found

---

**2.** We note that the trial court in its Findings of Fact and Conclusions of Law confused the 1953 Cessna Property with the 1980 Cessna Property.

that use of the Roadway was granted by permission of the Cessna Corporation and its predecessors in title.

■■■ Prescriptive easements are not favored in the law, and in Indiana, the party claiming one must meet stringent requirements. *Corporation for General Trade v. Sears,* 780 N.E.2d 405, 410 (Ind. Ct.App.2002). In order to establish the existence of a prescriptive easement, the evidence must show an actual, open, notorious, continuous, uninterrupted, adverse use for twenty years under a claim of right, or by continuous adverse use with the knowledge and acquiescence of the servient owner. *Bauer v. Harris,* 617 N.E.2d 923, 927 (Ind.Ct.App.1993). The party asserting the prescriptive title has the burden of showing each of these elements, which must be established as a necessary, independent, ultimate fact, and the failure to establish any one of such elements is fatal. *Sears,* 780 N.E.2d at 410. Continuity of use for the requisite twenty-year period may be established by tacking from the use of predecessors in title. *DeShields v. Joest,* 34 N.E.2d 168, 170, 109 Ind.App. 383, 387 (Ind.Ct.App. 1941). Where there has been use of an easement for twenty years which is unexplained, such use will be presumed to be under a claim of right, adverse, and sufficient to establish title by prescription unless that use is contradicted or explained. *Bauer,* 617 N.E.2d at 927. In other words, a rebuttable presumption of adversity arises under those circumstances, and in order to rebut that presumption the owner must explain such use by demonstrating that he merely permitted the claimant to use his land. *Id.*

In the present case, Wilfong seeks to establish the existence of a prescriptive easement during Inman's and his predecessors' ownership of the Wilfong property. In *Bauer,* we held that once an ease-ment by prescription is established, the right vests, and the easement is not extinguished thereafter for lack of subsequent use absent the intention to abandon a right to use the easement. *Id.* at 931.

During testimony, Inman, having lived on the Inman property for the better part of eighty years, explained that the Roadway was traveled for as long as he remembers because it was the only access to the Wilfong Property. The record reflects that, initially, Jim and Grace Davis (the Davises) traveled the Roadway by team and wagon to get from their residence on the Wilfong Property to the town of Williams. Inman testified that when he was ten years old he traveled by horse and buggy over the Roadway to the Wilfong Property to pick blueberries. After Inman purchased the Wilfong Property in 1944, he used the Roadway to get from the Inman Property to the Wilfong Property. Inman denied ever having asked permission to travel the Roadway since "for many, many years everybody that lived in that area owned land in that area, used that Roadway to gain access to it." (Transcript p. 24). Inman stated that he continually used the Roadway up to the present day.

Schlieper, who is eighty-one, considered the Inman Property to be her "old home place." (Tr. p. 63). Her earliest childhood memory, dating from 1932, is the Davises, owners of the Wilfong property, bringing them milk at night. She further testified that the Davises regularly used the Roadway to get from Williams to their residence. Likewise, Schlieper herself traveled the Roadway many times to help on the farm, then located on the Wilfong Property. She added that the Robertses, who originally owned the 1953 Cessna Property, regularly traveled over the Inman Property to reach the public road.

As Inman, Schlieper never asked permission to use the Roadway.

Ben Spreen, eighty-six years old and still going strong, testified that he regularly used the Roadway to visit the Davises. He added that the Davises traveled the Roadway because it was the only way out with horse and buggy. He stated that the Roadway "just [has] been there always so far as I know and nobody asked anybody to use it. It was there and everybody used it if necessary." (Tr. p. 75).

Lina McPherson, who lived on the 1953 Cessna Property from the nineteen forties until 1953, testified that she never objected to the use of the Roadway. She added that there was no need to ask permission to travel the Roadway across the 1953 Cessna Property up to the Wilfong Property. Likewise, the McPhersons themselves traveled over the Inman Property and 1980 Cessna Property to reach the public road.

Finally, Wilfong testified that he accesses his property through the 1980 Cessna Property, the Inman Property, and across the 1953 Cessna Property. He even started using this Roadway in 1985, prior to his purchase of the Wilfong Property. He stated that he never abandoned the easement he's now claiming.

Nevertheless, the Cessna Corporation focuses our attention on the testimony of two witnesses, alleging that the Roadway was traveled by permission only. First, the Cessna Corporation points to the testimony of Paula Trevithick (Trevithick), born in April 1960 as the daughter of Donald Cessna. Trevithick testified that the Cessna Corporation had permitted Inman to use the Roadway across the 1953 Cessna Property to reach the Wilfong Property. She added that although there are gates separating the 1953 Cessna Property from the Wilfong Property, these had never been locked. Trevithick locked the gates for the first time on August 24, 1998.

Secondly, during trial, Priscilla Cessna (Priscilla), Donald Cessna's wife, stated that at one point Inman rented pasture on the 1953 Cessna Property for a yearly payment of one hundred dollars. Priscilla explained that the rent also included the use of the Roadway. However, our review of the rent agreement reveals that the total rent received of one thousand four hundred dollars was solely for pasture rent up to January 1, 1983. The record is devoid of any evidence indicating that the rent included the usage of the Roadway.

Based on the overwhelming evidence, we find that no permission has ever been given to use the Roadway, linking the Wilfong estate to the public road. Although it is apparent that nobody knows the initial time the Roadway was ever used, testimonial evidence indicates its existence and use from as early as the nineteen thirties, when the Davises traveled from their property, the Wilfong Property, across the 1953 Cessna Property, the Inman Property, and the 1980 Cessna Property to reach the public road leading to Williams. Even assuming Trevithick's testimony is sufficient to establish that the Cessna Corporation had given permission to use the Roadway, the Roadway clearly had been in existence for more than twenty years prior to her birth and the Cessna Corporation's acquisition of the 1953 Cessna Property.

■ Nonetheless, the Cessna Corporation now maintains that the trial court properly determined that Wilfong's use of the Roadway crossing the 1953 Cessna Property was not adverse. We have previously held that adversity of use under a claim of right does not require a verbal assertion of a claim, but may be established merely by inferences drawn from the surrounding circumstances. *See*

*Bauer,* 617 N.E.2d at 930. Use is adverse where the use is inconsistent with the owner's title. *See id.* In support of its argument, the Cessna Corporation relies on *Wolfe v. Gregory,* 800 N.E.2d 237 (Ind.Ct. App.2003) where we held that since the use of a road was not adverse or hostile, but rather permissive, a license was created, not an easement. *Id.* at 240. However, unlike the instant case, in *Wolfe* the owner of the parcel, after constructing a road, explicitly permitted the owner of the landlocked parcel to use the road for ingress and egress to his property.

Here, the record reveals that the Cessna Corporation, or its predecessors in title never used the Roadway leading onto the Wilfong Property. Rather, the Roadway was of no benefit to them because it only accessed the Wilfong Property. Therefore, Wilfong's and his predecessors' use of the Roadway was inconsistent with the title to the 1953 Cessna Property in all respects. *See Bauer,* 617 N.E.2d at 930.

Based on all the evidence presented, we find that there has been an actual, open, notorious, continuous, uninterrupted, and adverse use of the Roadway, linking the Wilfong Property to the public road, for twenty years under a claim of right, which has never been abandoned. *See id.* at 927. Thus, we conclude that a prescriptive easement appurtenant to the Wilfong Property as the dominant estate over the servient estates of the 1953 Cessna Property, the Inman Property, and the 1980 Cessna Property has been established. Accordingly, the evidence does not support the finding of the trial court, which in turn does not support the trial court's conclusion. *See Ballard,* 737 N.E.2d at 415. Consequently, we hold that the trial court erred.

B. *Change in Location of the Easement*

■ The Cessna Corporation next asserts that a 1986 change in the location of

the prescriptive easement extinguished its existence. Specifically, the Cessna Corporation claims the continuous use of the Roadway was interrupted by its relocation by approximately thirty feet which is fatal to the Wilfong's contention of a prescriptive easement. We disagree.

■ In *Henning v. Neisz,* 148 Ind.App. 576, 268 N.E.2d 310 (1971), we stated that the course or location of an easement may be changed with the express or implied consent of all parties concerned. *Id.* at 314 (quoting 25 Am.Jur.2d, s. 69, p. 476, n. 10). Such consent may be implied from the acts and acquiescence of the parties, and an estoppel to claim a former location to be the true one arises from acquiescence in the change. *Id.*

The record reflects that in 1986, Inman sold some timber from the Wilfong Property. However, a curve in the Roadway on the 1953 Cessna Property made it difficult to handle large trucks. Inman testified that prior to moving the Roadway a few feet to accommodate the logging operation, he asked Donald Cessna's permission. He remembered : seeing Donald Cessna on his parents' 1980 Cessna Property and requested the particular change in the Roadway. Inman stated that "[t]here was no negotiation or any lengthy discussion about it." (Tr. p. 27). As a result, we conclude that all parties expressly consented to the change in the course of the prescriptive easement. *See id.* Consequently, the change in the location of the easement did not affect its continuing use.

C. *Express Easement established by Will*

■ Next, the Cessna Corporation maintains that the existence of an express easement appurtenant to the Inman Property precludes Wilfong from using the easement since the Wilfong Property does

not abut the Inman Property. Specifically, the Cessna Corporation alleges that only the Spreen Farm Partnership, as the current owner of the Inman Property, acquired easement rights to the express easement established by Cox' will. We find the argument unavailing.

In *Jeffers v. Toschlog,* 178 Ind.App. 603, 383 N.E.2d 457 (1978), we affirmed the trial court's decision that an easement by prescription was established, regardless of whether or not an easement appurtenant to the land had been created by an earlier deed. *Id.* at 460. At the outset, we note that the express easement devised by Cox' will is described as being for farm purposes only and measures twenty feet in width. Further, the prescriptive easement correlates with the location of the express easement over the 1980 Cessna Property. Testimonial evidence indicates that the Roadway is solely used for farm purposes and is approximately twenty feet wide. Since an easement is limited to the purpose for which it was created and cannot be extended by implication, we find that the location and purpose of the easement by prescription and express easement incident to the 1980 Cessna Property are similar. *See Bauer,* 617 N.E.2d at 931.

Furthermore, locating the express easement at the same place as the easement by prescription prevents the creation of a new passage over the Cessna 1980 Property for the benefit of Wilfong's ingress and egress. As such, while the nature and purpose of the easement remain the same, the actual burden carried by the servient estate does not increase significantly. *See Brock v. B & M Moster Farms, Inc.,* 481 N.E.2d 1106, 1106 (Ind.Ct.App.1985) (where we held that an easement cannot be changed to subject the servient estate to a greater burden than was originally agreed upon without consent of the owner of the servient estate). Thus, we conclude that the

existence of an express easement at the same place and for the same purpose as the prescriptive easement does not prevent the establishment of the prescriptive easement over the 1980 Cessna Property for the benefit of the Wilfong Property.

Lastly, Cessna Construction contends that the existence of a public road from Wilfong's Property to State Highway 450 extinguishes the need for the Roadway. In support of its argument, the Cessna Corporation presents an Order, dated September 5, 1938, of the Commissioners of Lawrence County to open the public road. *See* Appellee's App. Tab L. Nevertheless, during trial, Ben Spreen indicated that he does not remember any public road connecting the Wilfong Property to State Highway 450. Even the current owner, Wilfong testified that he has "never seen any existence of any road that way." (Tr. p. 91). Inman clarified that:

> [t]here's some advantages to being old. That was a, that was a proposed road. In fact, it was let as a WPA project and for reasons that no one has ever apparently figured out it was cancelled but people had work cards and they were ready on a certain date to move in and that road would have come from 450 north to the Ridge Road.

\* \* \*

There was no work actually done on it. (Tr. pp. 170–71).

However, regardless whether this public road was ever in existence, the possibility of alternative access to a landlocked parcel is only important to support a claim of an easement by necessity. *See, e.g., Wolfe,* 800 N.E.2d at 241. In the case at bar, Wilfong asserts the existence of a prescriptive easement, not an easement by necessity. Therefore, the alleged exis-

tence of a public road accessing the Wilfong Property is immaterial.

## CONCLUSION

Based on the foregoing, we conclude that the trial court erred in denying the existence of a prescriptive easement appurtenant to the Wilfong property over the servient estates of the 1953 Cessna Property, the Inman Property, and the 1980 Cessna Property.

Reversed.

KIRSCH, C.J., and NAJAM, J., concur.