Duane and Fredericka NODINE, Husband and Wife, and Glen and Coleen Snyder, Husband and Wife, Appellants–Plaintiffs,

v.

Gerald McNERNEY, Roger and Judy Kitchen, Tim and Mary Lou Orn, Ken and Kaye Donaldson, Steven and Dawn Castleman, Don and Margo Reed, Greg and Carla Mekus, Mr. and Mrs. Dennis Miller, Charles Lamb and Pam Kruse, Steven A. Mayer, Timothy and Lisa Derck, Don and Sally Stephenson, Jim and Bonnie Badenhop, Jeff and Marlene Rupp, Beth Vocke, Mary Erford, Jill Schumaker, Steve Piepenbrink, Helen Myers, Mr. and Mrs. Steven Myers, Harold and Ida Paton, Ray and Judy Schnettegoecke, Kevin and Ann Marie Wallace, Jim and Sharon Smolek, Mr. Lloyd McClellan, Jim and Helen Reynolds, John and Ginny Shappell, Jeanne Kreinbrink, Robert and Kathleen Murray, Rose Deventer, Paul and Dorothy Treece, Mary Van Gundy, Mr. and Mrs. Charles Meyer, William and Cindy Spratt, Larry and Linda Starr, Steve David, William and Linda Coyne, Dr. Wayne and Michelle Miller, William and Norma Mickelson, Ernie and Patricia Beck, Todd and Carrie Christlieb, E. Paul Kohli, John and Sheila Silowsky, Ed Linder, Lydia Gnagy, Max Gnagy, and Oakwood Park Association, Appellees–Defendants.

No. 76A05–0406–CV–335.

Court of Appeals of Indiana.

Aug. 23, 2005.

Robert J. Hardy, Thomas & Thomas, LLP, Waterloo, for Appellants.

Dane L. Tubergen, Hunt Suedhoff Kalamaros, LLP, Fort Wayne, for Appellees Don Reed, Margo Reed, Todd Christlieb, Carrie Christlieb, Ed Linder, Lydia Gnagy, and Max Gnagy.

## OPINION

SULLIVAN, Judge.

Following a bench trial, the trial court entered a judgment denying Appellants' Duane and Fredericka Nodine (the "Nodines") and Glen and Coleen Snyder (the "Snyders") (collectively the "Claimants") claim for title to real estate by adverse possession and granting the Appellees–Defendants'[1] cross-claim for a prescriptive easement over portions of the Nodines' property. Upon appeal, the Claimants present two issues for our review which we reorder and restate as: (1) whether the trial court erred in concluding that they did not acquire title through adverse possession to property bounded by their sea-walls, and (2) whether the trial court erred in ordering them to remove their seawalls from certain areas of the beachfront. Additionally, the Nodines argue that the trial court erred in granting the Back Lot Owners' cross-claim for a prescriptive easement over a meandering gravel path which traverses portions of the Nodines' property.

We affirm in part and reverse in part.

Oakwood Place is a subdivision in the Town of Hamilton in Steuben County

---

1. Of the named Appellees, only Don Reed, Margo Reed, Todd Christlieb, Carrie Christlieb, Ed Linder, Lydia Gnagy, Max Gnagy, Kevin Wallace, and Anne Marie Wallace actively participated in the trial court proceedings and subsequent bench trial. The only active Appellees in this appeal are Don Reed, Margo Reed, Todd Christlieb, Carrie Christlieb, Ed Linder, Lydia Gnagy, and Max Gnagy (collectively the "Back Lot Owners"). Kevin and Anne Marie Wallace have not filed an Appellee's Brief. All other named Appellees are nominal Appellees. *See* Appellate Rule 17(A).

which was established by a plat recorded on April 21, 1913. The Nodines own lots 13, 18, and the northern half of lot 17, and the Snyders own lots 14 and 15. As shown on Figure 1 below, the western boundaries of lots 14, 15, 17, and 18 front on the eastern edge of Hamilton Lake (formerly known as Fish Lake). The Back Lot Owners are also owners of lots in Oakwood Place. The recorded plat identified the beachfront, Water Street, Dock Street, and a fifteen foot alley. These areas were "dedicated to the use of the lot owners of said Village of Oakwood . . . ." Appendix at 62, 63.

The recorded plat and subsequent survey plats show that Water Street is located along the northern boundary of the Nodines' lot 18 and is thirty feet in width extending to the north; Dock Street is located along the southern boundary of the Snyders' lot 14 and is thirty feet in width extending to the south. *See* Figure 1. A meandering gravel path cuts across the northwest portion of the Nodines' lot 13, through a former platted alley,[2] across the northeast portion of the Nodines' lot 18, and then continues down Water Street to the water's edge. The location of the gravel path is depicted in Figure 1 as being between the two broken lines which begin in lot 13 and continue to the water's edge.

2. The original plat showed that the platted alley was fifteen feet in width and was located between lots 14, 15, 16, 17, and 18 on the west and lots 12 and 13 on the east. On September 2, 2003, the Hamilton Town Council, upon the Claimants' petition, vacated the platted alley across which the gravel path cuts. *See* Ind.Code § 36–7–3–12 (Burns Code Ed. Repl.2004) (setting forth procedure for vacation of public way). Upon vacation, that part of the former platted alley over which the gravel path cut became the property of the Nodines as they owned the lots which adjoined both sides of that part of the former platted alley. No interested person sought judicial review of the Council's decision.

Figure 1.

Since the 1960s, the Nodines, or their predecessors in title, have constructed and maintained a seawall to the west/northwest of their property along the water's edge.[3] The seawall extends from what is now the northwest corner of the Nodines' lot 18 approximately twenty feet onto Water Street. *See* Figure 1. The Snyders, and their predecessors in title, have also con-structed and maintained a seawall to the west/southwest of their property along the water's· edge.[4] From what is now the southwest corner of the Snyders' lot 14, the Snyders' seawall extends approximate-ly fifteen feet onto Dock Street. *See* Figure 1.

In 1993, the Claimants, along with other lake front lot owners, filed an action to

3. Originally, the Nodines' seawall was con-structed of large rocks; since the mid–1990s, it has been constructed of concrete.

4. When the Snyders purchased their property in the early 1980s, a rock seawall existed along the water's edge. The Snyders' seawall is now constructed of concrete.

quiet title through adverse possession of the dedicated beach front areas which lay between their respective lots and the shore of Hamilton Lake. In 1994, the Steuben Circuit Court entered a judgment quieting title to the beach front areas to the respective lake front lot owners. The property lines for each of the lake front lot owners were redrawn to include the beach front areas which they claimed by adverse possession and the title to which the trial court's judgment granted them. For the Claimants, their respective northern and southern property lines were extended in a straight line to the water's edge. The lines were drawn in this manner according to the surveyor's interpretation of the trial court's judgment. The Claimants did not challenge the location of the northern and southern property lines of the beach front area. Thus, according to the new property lines, the Claimants acquired title to the beach front contiguous to the west of their western property line and between their northern and southern property lines extended straight to the water's edge; they did not acquire title to those areas located within Water Street and Dock Street respectively which are bounded by their seawalls and to the north and south of their respective property lines.

In June 2002, the Nodines and the Snyders filed separate complaints to quiet title through adverse possession to portions of Water Street and Dock Street respectively (the "disputed areas"). Specifically, the Nodines sought adverse possession of that portion of Water Street which is bounded by their seawall as depicted in the shaded area in Figure 2 below. The trial court described the boundaries of this area as follows:

> "From the point where the seawall stops its extension across the beach area adjacent to Water Street, then in a straight line running generally in an east, southeastwardly direction until the northeast corner of the Nodines' Lot 18 is intersected, is the area the Nodines are asserting title to by virtue of adverse possession." Appellant's App. at 19–20.

The Snyders sought adverse possession of that portion of Dock Street which is bounded by their seawall as depicted in the shaded area in Figure 2 below. The trial court described the boundaries of this area as follows:

> "From the point where the seawall stops its extension across the beach area adjacent to Dock Street, then in a straight line running generally in an easterly/northeasterly direction until the southeast corner of the Snyders' Lot 14 is intersected, is the area the Snyders are now claiming title by adverse possession." Appellant's App. at 21a.

Figure 2.

Upon the Claimants' motion, the trial court consolidated the two cases. The Back Lot Owners filed a counter-claim requesting an injunction requiring the Nodines and the Snyders to remove all obstructions and impediments placed upon Water Street and Dock Street and the platted alley[5] which interfere with their ability to fully enjoy the rights and privileges dedicated to them by the claimed easement. The Back Lot Owners also sought to have an easement established across portions of the Nodines' property which the Back Lot vacated the alley.

5. The Snyders' complaint was filed before the action of the Town Council in 2003 which

Owners claim to have acquired by prescription; in the event the court declared that a prescriptive easement existed, the Back Lot Owners requested injunctive relief prohibiting the Nodines from obstructing the easement.[6]

A bench trial was held on February 11 and 12, 2004. On March 5, 2004, the trial court entered judgment denying the Nodines and Snyders' claim for title to the disputed areas through adverse possession. Additionally, the trial court granted the Back Lot Owners' request for an injunction and ordered the Nodines and the Snyders to remove that portion of their seawalls which protrude onto Water Street and Dock Street respectively. The trial court also granted the Back Lot Owners' counter-claim for the establishment of a prescriptive easement over the gravel path where it traverses over portions of the Nodines' lots 13 and 18 and for an injunction prohibiting the Nodines from obstructing the use of the gravel path. The Claimants filed a motion to correct error on April 5, 2004, which the trial court denied on April 28, 2004.

■ We first note that the Claimants requested, pursuant to Indiana Trial Rule 52(A), that the trial court enter findings of fact and conclusions thereon. "The pur-

pose of special findings is to provide the parties and the reviewing court with the theory upon which the case was decided." *ITT Indus. Credit Co. v. R.T.M. Dev. Co., Inc.,* 512 N.E.2d 201, 203 (Ind.Ct.App. 1987). In reviewing the judgment, this court must first determine whether the evidence supports the findings, and second, whether the findings support the judgment. *Bussing v. Indiana Dep't of Transp.,* 779 N.E.2d 98, 102 (Ind.Ct.App. 2002), *trans. denied.* We will reverse the judgment only where it is found to be clearly erroneous. *Id.* Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them, and the trial court's judgment is clearly erroneous if it is unsupported by the findings and the conclusions which rely upon those findings. *Id.* In determining whether the findings or judgment are clearly erroneous, we consider only the evidence most favorable to the judgment and all reasonable inferences flowing from them; we will not reweigh the evidence or assess witness credibility. *Id.* at 103.

■ The Claimants first argue that the trial court erred in denying their claim for title through adverse possession to the disputed areas.[7] Before addressing this

6. In 2003, the Nodines completed construction of a new home upon lots 17 and 18, and in the course of landscaping around their new home, caused large boulders and dirt to be placed within the gravel path thereby restricting access and use thereof.

7. In their Appellant's Brief, the Claimants argue that the trial court's judgment in 1994, which granted them title through adverse possession of the beach front areas, included title to the land they now claim through adverse possession. The Claimants acknowledge that in that prior adverse possession action they requested title only to the beach front areas between their property lines and the water's edge, but assert that the evidence presented in that action proved that they were entitled to

more than the land contiguous to the west of their western property line and between their northern and southern property lines—i.e. they were also entitled to that area bounded by their seawalls. The Claimants also assert that it is clear from the trial court's judgment in that case that the court found that they had adversely possessed those areas which lie to the north and south of their respective boundary lines and are bounded by their seawalls. We disagree.

In the complaint filed in the prior action, the Nodines and the Snyders made no mention of Water Street or Dock Street in their claim that they had acquired title to beach front areas by adverse possession. In addition, the Nodines and the Snyders acknowl-

issue, we note that the Claimants are appealing from a negative judgment. *See Romine v. Gagle*, 782 N.E.2d 369, 376 (noting that judgment entered against party bearing burden of proof is a negative judgment), *trans. denied.* Therefore, we will reverse the trial court's judgment upon this issue only if the evidence is without conflict and all reasonable inferences to be drawn from the evidence lead to a conclusion other than that reached by the trial court. *Bussing*, 779 N.E.2d at 103.

For over a century, Indiana courts have articulated specific elements required to establish adverse possession. While the elements were stated somewhat differently, a relatively consistent list of elements similar to elements of common law adverse possession developed. The traditional standard with which most are familiar is that to prevail on an adverse possession claim, the claimants must prove actual, visible, notorious, and exclusive possession of the real estate, under a claim of ownership hostile to the true owner for a continuous ten-year period. *See, e.g., King v. Wiley*, 785 N.E.2d 1102 (Ind.Ct.App.2003), *trans. denied; Rieddle v. Buckner*, 629 N.E.2d 860 (Ind.Ct.App.1994); *Penn Central Transp. Co. v. Martin*, 170 Ind.App. 519, 353 N.E.2d 474 (1976); *Worthley v. Burbanks*, 146 Ind. 534, 45 N.E. 779 (1897).

In *Fraley v. Minger*, 829 N.E.2d 476, 486 (Ind.2005), our Supreme Court synthesized and rephrased the elements of adverse possession, stating that "the doctrine of adverse possession entitles a person without title to obtain ownership to a parcel of land upon clear and convincing proof of control, intent, notice, and duration . . . ." Under the rephrased adverse possession elements, the control element takes into account the former elements of actual and exclusive possession. *Id.* Evidence of intent will reflect the former elements of claim of right, exclusive, hostile, and adverse possession. *Id.* The notice element covers the former visible, open, notorious, and in some ways hostile elements. *Id.* And finally, the duration element is a restatement of the continuous element. *Id.*

■ Here, the trial court, applying the traditional elements of adverse possession, concluded that the Claimants had not established that their use of the disputed areas was adverse or hostile. The court supported its conclusion by noting that in the 1993 adverse possession complaint, the Claimants acknowledged that "the back-lot owners of Oakwood Place had use of the streets or easements to Hamilton Lake . . ." which were identified on the plat of Oakwood Place admitted into evidence during the course of the trial in that case. Appellant's App. at 28. The court further noted that there were no impediments to the streets and/or easements shown on the plat. The court concluded:

"A person cannot simultaneously claim title through adverse possession to real estate in a manner alleged to be hostile and adverse, and at the same time acknowledge that there exists many other

edged the right of the lot owners to use the streets or easements to access Hamilton Lake. As for the trial court's judgment in that action, we think it is quite logical to interpret it to mean that the Nodines and the Snyders acquired title through adverse possession to only that property contiguous to the west of their property and between their northern and southern property lines extended in a straight line to the water's edge. Further, the fact that the Nodines and the Snyders filed a new action claiming adverse possession of those portions of Water Street and Dock Street which are bounded by their seawalls suggests that they did not believe that they had acquired title to those areas in the prior action.

people who have, and should continue to have in the future, the right to make use of the same real estate." Appellant's App. at 29.

The trial court also concluded that from the time of the prior action, wherein the Claimants recognized the rights of the lot owners to use the streets, until the present case, less than ten years had elapsed. Thus, the court concluded that Claimants' claim that they had adversely possessed the disputed areas since the prior action necessarily failed because the possession would not have been for the full statutory period.

With regard to the elements of adverse possession as restated in *Fraley*, the trial court's conclusion that the Claimants' use of the disputed areas was not adverse or hostile is most directly related to a finding of lack of intent, and to some extent can be said to impact the elements of control and notice. To establish the intent element, "[t]he claimant must demonstrate intent to claim full ownership of the tract superior to the rights of all others, particularly the legal owner . . . ." *Fraley*, 829 N.E.2d at 486. To establish the requisite control, the claimant must "exercise a degree of use and control over the parcel that is normal and customary considering the characteristics of the land . . . ." *Id.* The notice element is established if the claimant's actions with respect to the land are sufficient to give actual or constructive notice to the legal owner of the claimant's intent and exclusive control. *Id.*

Here, the Claimants in the 1993 complaint disavowed their claim to Water Street and Dock Street as those streets were designated in the original plat of Oakwood Place and acknowledged the right of other lot owners to use those streets to access Hamilton Lake. Such recognition is inconsistent with their current

claim that they adversely possessed those portions of Water Street and Dock Street which are bounded by their seawalls. The Claimants' recognition of the rights of other lot owners to use Water Street and Dock Street, including the disputed areas, shows that the Claimants did not intend to claim full ownership of those areas and that they were not exerting exclusive control thereof. *See, e.g., Rieddle*, 629 N.E.2d at 862 (noting that possession is not exclusive where claimant occupies land in common with third persons). It also shows that their possession was not adverse or hostile. *See, e.g., Panhandle Eastern Pipe Line Co. v. Tishner*, 699 N.E.2d 731, 736–37 (Ind.Ct.App.1998) (noting that possession is not hostile if claimant acknowledges a superior right in another to use or occupy the subject land).

The Claimants nevertheless argue that their construction of seawalls which were permanent improvements to Water Street and Dock Street was itself a hostile act sufficient for purposes of adverse possession. We disagree. Here, the Claimants, by virtue of the dedication of the streets for lot owners to have access to Hamilton Lake, had as much right to use and maintain Water Street and Dock Street for access to Hamilton Lake as any other lot owner in Oakwood Place. The Claimants did so by landscaping and installing concrete seawalls along the water's edge at the end of Water Street and Dock Street. Their actions were consistent with such dedication and thus, not hostile as against the other co-owners of the easement. Indeed, evidence presented showed that both Water Street and Dock Street were nearly impassable and unusable to gain access to Hamilton Lake but for the maintenance of and improvements made by the Nodines and Snyders respectively.

Here, the construction of a seawall is unlike the erection of a fence which this

court held in *Rieddle, supra,* was a hostile and notorious act. As noted in *Rieddle,* we have repeatedly held that the erection of a fence should alert any reasonable title holder that his property is being adversely claimed. 629 N.E.2d at 863. Indeed, a main reason for erecting a fence is to keep others out—to exclude them from use of certain property. The seawalls at issue in this case serve many purposes, including to make Hamilton Lake accessible, which is consistent with the rights of the Claimants and all other lot owners to use Water Street and Dock Street.[8] The existence of a seawall would not necessarily alert those who have an interest in the property that the property is being adversely claimed; the seawalls did not serve to exclude other lot owners from the disputed areas. Under the facts of this case, we cannot conclude that the construction of the seawalls was a hostile act as against the other co-owners of the easement along Water Street and Dock Street.

In terms of the *Fraley* elements, the evidence presented shows that, at least up until the previous adverse possession judgment, the Claimants had not and did not intend to claim full ownership or assert exclusive control over the disputed areas. The Claimants did not present any evidence which showed that since the prior adverse possession action, they had done anything different than what they had done before the prior action in maintaining the disputed areas. We thus conclude that the trial court's findings are supported by the evidence presented, and those findings support the trial court's conclusion that the Claimants had not established that their possession of the disputed areas was adverse or hostile as against the Back Lot Owners. We therefore affirm the trial court's judgment denying the Claimants' request for title to the disputed areas through adverse possession.

The Claimants also argue that the trial court erred in ordering the removal of those portions of their seawalls which encroach upon Water Street and Dock Street. The Claimants assert that such relief was not requested at trial and that there was no evidence presented which showed that the seawalls were harmful or impeded the use of Water Street or Dock Street. We agree with the Claimants.

Owners of an easement possess all rights necessarily incident to the enjoyment of the easement, including the right to make such repairs, improvements, or alterations as are reasonably necessary to make the grant of the easement effectual. *Litzelswope v. Mitchell,* 451 N.E.2d 366, 369 (Ind.Ct.App.1983). In *Litzelswope,* we extended the general rule to the situation where there are several owners in common of an easement—"where there are several owners in common of an easement, each owner has a right to make reasonable repairs, alterations, and improvements to the easement, so long as such do not injuriously affect [a] co-owner." *Id.* In other words, the repair, alteration, or improvement may not render the easement appreciably less convenient and useful for one of the co-owners. *Id.* at 370. In considering whether injunctive relief is appropriate, courts should consider the reasonable necessity of the alterations or improvements to the enjoyment of the easement and the injurious effect upon other co-owners, with the latter being given more significance. *Id.* Courts have not interfered with alterations or improvements unless it is clear that the objecting party would be seriously

8. Those portions of the seawalls in question might well also serve to prevent erosion of the streets by the water's edge.

inconvenienced in his own use of the easement. *Id.*

Here, while the Back Lot Owners alleged in the counter-claim that the Claimants' seawalls obstructed the full and unfettered use of the lake shore at the end of Water Street and Dock Street, the evidence presented at trial was to the contrary. Defendant Reed testified that the seawall did not impede his use of the easement in any way and indeed, noted that he made use of the seawall and would sit upon it while his grandson played in the water. The trial court noted that in the eight to ten feet of Water Street which exists adjacent to where the Nodines' seawall ends exists a "haphazardly constructed" boat ramp and that, since the early 1960s, boats have intermittently been launched from this boat ramp. Appellant's App. at 20. The court also noted that lot owners were able to use those areas of Water Street and Dock Street not obstructed by the seawalls for swimming or wading in Hamilton Lake. The court also noted that a group of lot owners attached a pier to that portion of the Snyders' seawall which extended into Dock Street.

This evidence shows that the seawalls have not had an injurious effect upon lot owners' use of Water Street and Dock Street for access to Hamilton Lake. To be sure, we have reviewed the record and have found no evidence which suggests that the presence of the seawalls across portions of Water Street and Dock Street at the water's edge has impeded or hindered the use of the lot owners to access Hamilton Lake. The seawalls have been in existence, in some form or another, for over four decades, and until now, there has been no objection to their location. Further, even since the seawalls were erected, lot owners have periodically made use of Water Street and Dock Street to launch boats, for swimming or wading in Hamil-

ton Lake, and for the erection of a pier. The benefits of the seawalls were stated best by the Back Lot Owners' counsel at the conclusion of the Claimants' case-in-chief in arguing for judgment on the evidence on the issue of adverse possession: "The seawall enhances the use of the easement. Makes it much easier to put a dock out. Keeps the shoreline preserved. There is no impediment to the easement by putting out a seawall." Transcript at 154.

As co-holders of the Water Street and Dock Street easements, the Claimants had a right to make reasonable improvements thereto; here, that improvement included the construction of a seawall. The Back Lot Owners did not establish that the seawalls rendered the easement appreciably less convenient or useful or that they were inconvenienced thereby. We therefore conclude that the trial court's findings do not support the imposition of an injunction ordering that those portions of the Claimants' seawalls which encroach upon Water Street and Dock Street be removed. The trial court's judgment in this regard is reversed.

Finally, the Nodines argue that the trial court erred in finding the existence of a prescriptive easement across the northwest portion of lot 13 and the northeast portion of lot 18. On this issue, because the Nodines did not have the burden of proof, they are appealing from an adverse judgment. *See Romine*, 782 N.E.2d at 376. When the trial court enters findings in favor of a party bearing the burden of proof, the findings are clearly erroneous if they are not supported by substantial evidence of probative value. *Id.*

Prescriptive easements are not favored in the law, and in Indiana, the party claiming one must meet stringent requirements. *Wilfong v. Cessna Corp.*,

812 N.E.2d 862, 866 (Ind.Ct.App.2004). In order to establish the existence of a prescriptive easement, the evidence must show an actual, open, notorious, continuous, uninterrupted, adverse use for twenty years under a claim of right, or by continuous adverse use with the knowledge and acquiescence of the servient owner.[9] *Id.* The party asserting the prescriptive right has the burden of showing each of these elements, which must be established as a necessary, independent, ultimate fact. *Id.* The failure to establish any one of these elements is fatal. *Id.* The existence or non-existence of a prescriptive easement is a question of fact. *Ballard v. Harman,* 737 N.E.2d 411, 418 (Ind.Ct.App.2000).

██ The gravel path was created by the Nodines' predecessor in interest and has been in existence since the 1960s. As noted above, the gravel path begins on the northwest corner of the Nodines' lot 13, then heads in a westerly direction across what was once a platted alley and then across the northeast portion of the Nodines' lot 18 before continuing down Water Street to the water's edge. In their counter-claim, the Back Lot Owners sought a prescriptive easement across the entire gravel path.

The evidence presented at trial showed that Water Street, and hence the gravel path, was used occasionally and sporadically by lot owners in order to launch boats or for swimming and wading. One lot owner testified that during one summer in the 1980s he attempted to launch a boat, but because it was so difficult, he never attempted to use Water Street again. Another Back Lot Owner testified that he

had in the past used Water Street to access Hamilton Lake so that his grandson could go swimming and wading in the water, and that in the winter, they had used the area for sledding. We further note that the court, in finding that Water Street was used by the Back Lot Owners, found that boats were "intermittently" launched. The only evidence of consistent use was that the owners of lot 11, which was immediately to the north of Water Street, would use the gravel path to access their property from a southern point.[10]

Based upon this evidence, the trial court found that the gravel path has "historically" been used for both pedestrian and vehicular traffic. The trial court also made reference to the specific use of the gravel path by the owners of lot 11. Based upon these findings, the trial court declared that the Back Lot Owners had established a prescriptive easement over those portions of the meandering gravel path which crossed over the Nodines' lots 13 and 18. The trial court concluded, however, that the Back Lot Owners were not entitled to a prescriptive easement across that portion of the gravel path which existed upon Water Street or what was once the platted alley. The court explained that the Back Lot Owners already had the benefit of an easement for the use of Water Street to access Hamilton Lake, and thus their use of the gravel path was not hostile or adverse. With regard to the former platted alley, the court noted that until 2003, when the Nodines successfully petitioned the Hamilton Town Council for the vacation of the platted alley across which the gravel path cuts, the lot owners, by virtue of the dedication in the original plat, had the

9. It is unnecessary for us to determine whether the *Fraley* phrasing of the requisites for establishment of title by adverse possession is also applicable to establishment of a prescriptive easement.

10. Since the Nodines obstructed the meandering gravel path, the owners of lot 11 have used another roadway maintained by other lot owners to access the residence upon lot 11 from a northern point.

right to use that part of the gravel path; thus, their use was not adverse or hostile. The court thus concluded that the Back Lot Owners had not established their right to a prescriptive easement across that part of the gravel path which existed in what was once the platted alley.

We note that a finding of "historical" use is not sufficient in and of itself to support a conclusion that the Back Lot Owners established all of the elements which would entitle them to a prescriptive easement over the gravel path. Further, after reviewing the record, we conclude that there was insufficient evidence of probative value from which the court could have concluded that the "historical" use of the gravel path was continuous and uninterrupted for twenty years so as to support its judgment that the Back Lot Owners had acquired a prescriptive easement. We therefore conclude that the trial court's judgment declaring that the Back Lot Owners had acquired a prescriptive easement is clearly erroneous.

We also note that because the trial court did not declare that a prescriptive easement existed across the gravel path as it passed through what was once the platted alley, use of the gravel path as it cut across lot 13 and lot 18 was completely frustrated. The Back Lot Owners cannot use a prescriptive easement across lot 13 to gain access to a prescriptive easement across lot 18 without trespassing across that portion of the gravel path which lies across the once platted alley that is now owned by the Nodines and across which the trial court concluded that the Back Lot Owners did not acquire a prescriptive easement.[11] The prescriptive easements across those portions of the Nodines' lots 13 and 18 serve no purpose given that the

Back Lot Owners did not acquire a prescriptive easement across that portion of the gravel path on what was once the platted alley which connects the path existing on lots 13 and 18. We therefore reverse the trial court's judgment granting a prescriptive easement over the Nodines lots 13 and 18. As a result, the injunction ordering the Nodines to remove obstructions from the gravel path where it crosses over lots 13 and 18 is also reversed.

The judgment of the trial court is affirmed in part and reversed in part.

NAJAM, J., and RILEY, J., concur.

---

11. The Back Lot Owners did not cross-appeal that portion of the trial court's judgment finding that they had not acquired a prescriptive

easement over the gravel path which exists on what was once a platted alley.