**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

APPELLANT PRO SE:

**LORRAINE TIETJEN**
Indianapolis, Indiana

ATTORNEY FOR APPELLEES:

**JONATHAN R. ELROD**
Elrod & Mascher, P.C.
Indianapolis, Indiana

**FILED**

Apr 04 2012, 9:21 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LORRAINE TIETJEN, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1102-PL-152 |
| | ) | |
| PEP EDUCATIONAL SUPPORT, INC., | ) | |
| TURNER MARKETING, INC., and | ) | |
| RICHARD P. TURNER, | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Theodore M. Sosin, Judge
Cause No. 49D02-0812-PL-56249

April 4, 2012

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Lorraine Tietjen appeals the trial court's judgment in favor of PEP Educational Support, Inc. ("PEP"), Turner Marketing, Inc. ("TMI"), and Richard P. Turner ("Turner") following a bench trial on her complaint alleging fraud and breach of contract. Tietjen appears to present several issues for our review, but the statement of issues is indiscernible. In essence, Tietjen seems to contend that the trial court erred when it entered judgment in favor of PEP, TMI, and Turner.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The trial court set out the facts and procedural history of this case as follows:

1. PEP is an Indiana nonprofit corporation that endeavors to integrate a voucher system to raise funds for local schools and educational savings accounts for college scholarships. . . . Turner is the National Director of PEP, and in June and July of 2005, PEP was unfunded and had no employees.

2. TMI is a for[-]profit corporation owned by Turner. PEP has contracted with TMI to market vouchers for PEP. TMI has no employees, but plans on the use of District Managers as independent contractors to be paid by commission.

3. Turner is employed as a prescription courier and receives no income from TMI or PEP.

4. Turner placed an employment advertisement with Workforce One regarding the position of an Administrative Assistant. On July 15, 2005, Tietjen responded to the Turner ad and the parties met at an Einstein's Bagels. At that meeting, Turner advised Tietjen that PEP was doing some preliminary work to identify potential employees contingent upon the receipt of a grant that was currently in process. Turner further advised Tietjen that upon the receipt of a grant, that she would be considered for employment.

5. Tietjen acknowledged that Turner explained the PEP organization and how it worked and that Turner represented that he hoped he would get funding to be in a position to hire and pay her.

6. Tietjen and Turner did not discuss Tietjen's proposed wages on that date or any other date. Tietjen did not ask about her wages and Turner did not specifically offer a job. Tietjen's sole testimony as to the terms of her employment was that her terms of employment were found within the "match sheet" she obtained from Workforce One. Those terms listed a job from 8:00 A.M. to 5:00 P.M., full time, and with a pay range of $100.00 to $200.00 per day.

* * *

8. During the July 15, 2005, interview, Tietjen advised Turner that she was currently without a permanent residence, and Turner offered that he had a spare room and would consider her as a roommate, if she would help out around the house. While Tietjen's recollection of that meeting was that her room would be paid for by housework, Turner testified rent was to be $100 a week with house cleaning or $125 a week without household cleaning. Tietjen moved in the next day. Within days of moving in, Turner presented Tietjen with a lease, which she had her lawyer review. The lease contemplated two separate rates: one with cleaning, and one without cleaning. The lease was never executed. . . .

9. Testimony of both Plaintiff and Defendant was that Tietjen was advised a few days after she moved to Turner's Condominium that the grant discussed at the July 15, 2005, meeting would not happen.

10. [Tietjen filed a complaint against the defendants, and, at the subsequent trial,] Tietjen submitted time records for the 4 weeks that she lived in Turner's Condominium that purports to establish the work done on behalf of Turner, PEP and TMI. Although Tietjen maintains that she was ready and available for work from 8:00 A.M. to 5:00 P.M., her log chronicled less than 21.2 hours over 4 weeks, with 2 hours listed as work for PEP, over half of the remaining hours on domestic activities, along with a July 18th entry that merely states "I did my own errands."

11. Turner testified that he was unaware of any work Tietjen did for PEP that was unrelated to housecleaning. . . . Tietjen testified that the only reason she did not work eight-hour days was because Turner did not give her sufficient work. Tietjen's testimony was vague as to how she actually spent her work days. . . .

3

\* \* \*

13.  On September 8, 2005, Tietjen was evicted from the home by the Wayne Township Small Claims Court. Tietjen did not appeal the eviction within sixty days. Tietjen appealed a judgment against her for rent on November 13, 2008.

14.  Tietjen has litigated this matter in two small claims courts and two superior courts over the course of over five years. Both of the small claims actions resulted in default judgments for failure to appear. In this court, Tietjen has filed three complaints. Tietjen's claim at trial of this cause is to damages in the amount of $25,000 for wrongful eviction.

Brief of Appellant at 31-35.[1]

Following the bench trial, the trial court issued the following conclusions:

16.  The facts presented clearly establish that there was no offer of employment by Turner, no meeting of the minds as to pay rate, hours, or duties. Tietjen's unilateral belief that she was hired is insufficient to bind Turner, TMI, or PEP. No employment contract existed, either expressed or implied. The evidence supports the fact that Turner and Tietjen did not conduct themselves in a manner that would suggest an employer-employee relationship. The two parties acted more as roommates than employer and employee.

\* \* \*

18.  The employment advertisement only reflected the present intention to interview job-seekers. The advertisement made no misrepresentation of a past or existing fact. At the initial meeting, Turner testified that PEP was not funded, PEP could not hire, and that grant funding was anticipated. The representation that a grant may come in the future, even if untrue, cannot be the grounds for fraudulent misrepresentation. The circumstances reveal that Tietjen could not reasonably believe she was hired at the initial meeting because she was not actually asked to do any work other than domestic activities.

19.  Tietjen failed to appeal her eviction from Turner's property within sixty days, and her claim for wrongful eviction is barred.

---

[1] Tietjen did not include a copy of the trial court's order in her appendix. See Ind. Appellate Rule 50(A)(2)(b).

4

20. Tietjen's rent was to be in the amount of $100 a week. Turner is entitled to $700.00 for seven weeks of rent.

21. . . . Tietjen's numerous continuances, her failures to appear, and her on-again off-again pursuit of this litigation is troubling. While a pro se party may be given some latitude, Tietjen's actions are not as easily overlooked. With the introduction of her time log, it became readily apparent that Tietjen's claims are at best frivolous. She pursued a claim for wages involving four 40-hour weeks, even though she testified she did not work 40-hours a week, did not work 8:00 A.M.-5:00 P.M., and worked the equivalent of less than three days. The fact that Tietjen maintained at trial that her time log reflected only household duties is not supported by any other evidence which is part of this Court's record. The Defendant's counsel is ordered to provide the Court with an Affidavit of Attorney's fees for consideration by the Court.

THEREFORE, it is ORDERED, ADJUDGED and AGREED that:

1. As to Lorraine Tietjen's Amended Complaint, judgment is entered in favor of Richard P. Turner, Turner Marketing, Inc., and PEP Education Support, Inc.

2. As to Richard P. Turner's claim for eviction, judgment is entered in favor of Richard P. Turner and against Lorraine Tietjen in the amount of Seven Hundred Dollars ($700.00).

3. As to the Counterclaim of [Turner, TMI, and PEP, seeking rent payments and attorney's fees], judgment is entered against Lorraine Tietjen in an amount to be determined after counsel's submission of an Affidavit of Attorney's Fees.

4. Defendant's counsel having submitted his Affidavit for Attorney's Fees, the Court now enters a judgment in favor of Richard P. Turner and against Lorraine Tietjen for attorney's fees in the amount of $7,000.00.

Id. at 36-39. This appeal ensued.

## DISCUSSION AND DECISION

Tietjen is appealing from both an adverse judgment and a negative judgment. Specifically, the entry of judgment in favor of Turner on his counterclaim for eviction and in favor of Turner, TMI, and PEP on their claim for attorney's fees is an adverse

judgment. Thus, we will hold the trial court's findings on those counterclaims clearly erroneous if they are not supported by substantial evidence of probative value. See Garling v. Ind. Dep't of Nat'l Res., 766 N.E.2d 409, 411 (Ind. Ct. App. 2002), trans. denied. And even if the supporting evidence is substantial, we will reverse only if we are left with a definite and firm conviction that a mistake has been made. See id.

The ruling against Tietjen on her claims, however, is a negative judgment. Therefore, we will reverse the trial court's judgment on her claims only if the evidence is without conflict and all reasonable inferences to be drawn from the evidence lead to a conclusion other than that reached by the trial court. See Nodine v. McNerney, 833 N.E.2d 57, 65 (Ind. Ct. App. 2005), clarified on reh'g, trans. denied. In determining whether a judgment is clearly erroneous, we do not reweigh the evidence or determine the credibility of witnesses, and we consider only the evidence supporting the judgment and the reasonable inferences to be drawn therefrom. Councellor v. Ecenbarger, Inc., 834 N.E.2d 1018, 1021 (Ind. Ct. App. 2005).

Initially, Turner, TMI, and PEP contend that Tietjen has waived the issues she asserts on appeal. In particular, they point out that, in her brief, Tietjen: "makes no references to the transcript[;] fails to separate the issues[;] fails to cite any case law, []or [include a] standard of review[;] repeatedly references evidence not introduced at trial[; and] repeatedly makes conclusory statements." Brief of Appellees at 8. We must agree.

It is well settled that pro se litigants are held to the same standards as licensed attorneys and are required to follow procedural rules. Evans v. State, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004), trans. denied. Tietjen's violations of the appellate rules are

numerous and flagrant. First, while Tietjen includes a section entitled "TABLE OF AUTHORITIES," that section consists of a list of Indiana statutes regarding employment law and landlord-tenant relations and an excerpt from a U.S. Department of Labor website. None of the authorities listed are included in the argument section of Tietjen's brief.

Next, a section of Tietjen's brief entitled "STATEMENT OF ISSUES AND ARGUMENT" includes nine numbered paragraphs. Those paragraphs do not include concise statements of particular issues as contemplated by Indiana Appellate Rule 46(A)(4). For example, the first paragraph reads as follows:

> Jon Elrod [defense counsel] lied to Judge Sosin about me, especially during times that were off the record and not being recorded. He did this during a conference and at the end of this trial. Elrod slandered my good name and upstanding character by lying and saying that I'd "been arrested" when he knows for a fact I've never been arrested in my life and have NO arrest record! I even passed the FBI background check with no issues in 2010. In fact, that background check was the first and only time I've been fingerprinted.

Brief of Appellant at 10. We are unable to discern any issue presented for our review in Tietjen's statement of the issues.

Finally, Tietjen does not make any cogent argument or cite to legal authority in the argument section of her brief. As our supreme court has stated,

> The requirement in Appellate Rule [46(A)(8)] that a party provide cogent argument with adequate citation of authority serves at least two objectives. First, it affords opposing parties a fair opportunity to respond. Second, it promotes impartiality in the appellate tribunal; <u>a court which must search the record and make up its own arguments because a party has presented them in perfunctory form runs the risk of being an advocate rather than an adjudicator</u>.

Keller v. State, 549 N.E.2d 372, 373 (Ind. 1990) (emphasis added).

We hold that Tietjen has waived review of any issues she has presented in this appeal.  Waiver notwithstanding, our review of the record indicates that the evidence supports the trial court's findings and conclusions.  To the extent that we can discern the issues Tietjen attempts to set out, she appears to ask that we reweigh the evidence and assess the credibility of the witnesses, which we will not do.

Affirmed.

ROBB, C.J., and VAIDIK, J., concur.